**DAPEER ROSENBLIT & LITVAK, LLP**
William Litvak, Esq.
Cal. Bar No. 90533
11500 W. Olympic Blvd., Suite 550
Los Angeles, CA 90064
E: wlitvak@drllaw.com
T: (310) 477-5575

**IJH LAW**
Ignacio Hiraldo, Esq. (*pro hac vice forthcoming*)
FL. Bar No. 56031
1200 Brickell Ave., Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: (786) 496-4469

**EISENBAND LAW, P.A.**
Michael Eisenband, Esq. (*pro hac vice forthcoming*)
FL Bar No. 94235
515 E. Las Olas Blvd., Suite 120
Fort Lauderdale, Florida 33301
E: MEisenband@Eisenbandlaw.com
T: (954) 533-4092

*Attorneys for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATHEW HUFNUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>DONOTPAY, INC., a Delaware Corporation,<br><br>Defendant. | Case No.  3:20-cv-8701<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, ET SEQ. (TCPA)**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1. Plaintiff, Mathew Hufnus, brings this action against Defendant, Donotpay, Inc., to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA").

3. Defendant operates an app which claims to be "the world's first robot lawyer."[1]

4. Defendant also uses an automatic telephone dialing system to send mass automated marketing text messages to individuals' cellular phone numbers without first obtaining the required express written consent.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District, including Plaintiff.

---

[1] https://donotpay.com/

CLASS ACTION COMPLAINT
2

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of the State of Illinois.

9. Defendant is a Delaware corporation whose principal office is located at 164 Townsend Street, Suite 2A Breather, San Francisco CA 94107. Defendant directs, markets, and provides its business activities throughout the United States, including throughout the state of California.

10. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## THE TCPA

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of

privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15. In 2012, the FCC issued an order further restricting automated <u>telemarketing</u> calls, requiring "prior express <u>written</u> consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

16. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

CLASS ACTION COMPLAINT
4

19. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

21. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23. In regard to what constitutes an ATDS, the Ninth Circuit has explained "that the statutory definition of ATDS includes device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *Marks v. Crunch San Diego, LLC*, 904 F. 3d 1041, 1043 (9th Cir. 2018).

24. The Ninth Circuit has further explained that "By referring to the relevant device as an '<u>automatic</u> telephone <u>dialing</u> system,' Congress made clear that it was targeting equipment that could engage in automatic dialing, rather than equipment that operated without any human oversight or control." *Marks,* 904 F. 3d at 1052 (citing 47 U.S.C. § 227(a)(1))(Emphasis in *Marks*).

## FACTS

25. On or about September 26, 2020, Defendant caused the following automated text messages to be transmitted to Plaintiff's cellular telephone number ending in 2163 ("2163 Number"):





26. The text messages state: Hey there it's Jen from DoNotPay – we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic – DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the."

27. Plaintiff is the subscriber and/or sole user of the 2163 number.

28. Defendant's text messages constitute telemarketing/advertising because they promote Defendants business, goods and services.

29. Specifically, the text message asks Plaintiff to sign-up for Defendant's services.

30. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted by marketing text messages sent using an ATDS.

31. The number used by Defendant (415-329-3731) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text

messages en masse, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

32. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

33. The impersonal and generic nature of Defendant's text messages, demonstrates that Defendant utilized an ATDS in transmitting the messages. The messages include no personal identifiers and are formatted in a generic manner.

34. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

35. Indeed, the internet is filled with people who received identical messages as Plaintiff from the same number as Plaintiff as shown below:

//

//

//

//

//

//

//

//

//

[Screenshot from sms24.me showing "SMS received from +14153293731" with three messages:

a month ago — Phone Number: +16788136870
"Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay."

2 months ago — Phone Number: +15404025941
"Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay."

2 months ago — Phone Number: +15012608782
"Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay."]

//

//

//

//

//

//

//

//

---

[2] https://sms24.me/messages/14153293XXX

2 months ago

**Phone Number:** 🇺🇸 +15595866033
Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.

3 months ago

**Phone Number:** 🇺🇸 +19294510662
Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.

3 months ago

**Phone Number:** 🇺🇸 +13364945921
Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.

4 months ago

**Phone Number:** 🇺🇸 +14147929579
Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.

4 months ago

**Phone Number:** 🇺🇸 +17652337659
Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.[3]

4 months ago

**Phone Number:** 🇺🇸 +18023270886
[1/3] Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year

4 months ago

**Phone Number:** 🇺🇸 +18023270886
[3/3] he app or at donotpay.com/save - Best wishes, Jen from DoNotPay.

4 months ago

**Phone Number:** 🇺🇸 +18023270886
[2/3] . Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in t

6 months ago[4]

---

[3] https://sms24.me/messages/14153293XXX
[4] https://sms24.me/messages/14153293XXX

CLASS ACTION COMPLAINT
10

> Receiver: 12528227127
>
> Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.
>
> — 3 weeks ago

> Receiver: 16209128005
>
> Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.
>
> — 3 weeks ago

> Receiver: 18192724789
>
> Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.
>
> — 3 weeks ago

> Receiver: 12052458094
>
> Hey there it's Jen from DoNotPay - we know it's a lot to ask for your payment details upfront, we really do. But here's a statistic - DoNotPay users save an average of $450 in cold, hard cash per year. Sue robocallers, cancel free trials and never have to deal with customer service again. If you aren't satisfied, we'll go ahead and delete your details and refund you in full. Finish signing up in the app or at donotpay.com/save - Best wishes, Jen from DoNotPay.
>
> — 1 month ago

---

[5] https://www.getfreesmsnumber.com/virtual-phone/sender/14153293731

36. To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

37. Defendant's text message took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited text messages like Defendants' poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

38. Defendant's text message also caused the depletion of Plaintiff's cellular telephone battery. The battery used to power Plaintiff's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff's cellular telephone.

39. Defendant's unsolicited text message caused Plaintiff additional harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's call also inconvenienced Plaintiff and caused disruption to his daily life.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

40. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

41. Plaintiff brings this case on behalf of the Class defined as follows:

//
//
//

**NO CONSENT CLASS:** All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number for the purpose of promoting and/or advertising Defendant's goods and/or services.

42. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

43. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

44. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

46. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

    a) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

b) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

c) Whether Defendant's conduct was knowing and willful;

d) Whether Defendant is liable for damages, and the amount of such damages; and

e) Whether Defendant should be enjoined from such conduct in the future.

47. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

48. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

49. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

50. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual

lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

51. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and Do Not Consent Class)

52. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

53. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

54. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1).

55. Defendant – or third parties directed by Defendant – used an ATDS to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

56. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

57. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an ATDS to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

58. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

59. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of actual and statutory damages for Plaintiff and each member of the Class;

c) As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq*., Plaintiff seeks for himself and each member of the Class $500.00

1  in statutory damages for each and every violation pursuant to 47 U.S.C.
2  § 277(b)(3)(B);
3  d) As a result of Defendant's knowing and/or willful violations of 47
4  U.S.C. §§ 227, *et seq*., Plaintiff seeks for himself and each member of
5  the Class treble damages, as provided by statute, up to $1,500.00 for
6  each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B) and §
7  277(b)(3)(C);
8  e) An order declaring that Defendant's actions, as set out above, violate
9  the TCPA;
10  f) An injunction requiring Defendant to cease all unsolicited call activity,
11  and to otherwise protect the interests of the Class;
12  g) An injunction prohibiting Defendant from using, or contracting the use
13  of, an ATDS without obtaining, recipient's consent to receive calls
14  made with such equipment;
15  h) An award of reasonable attorneys' fees and costs pursuant to, *inter alia*,
16  California Code of Civil Procedure § 1021.5; and
17  i) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff hereby demand a trial by jury.

//
//
//
//
//
//

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

Respectfully submitted,

Dated: December 8, 2020

By: */s/ Michael Eisenband*
Michael Eisenband, Esq.
(*pro hac vice forthcoming*)
MEisenband@Eisenbandlaw.com
**EISENBAND LAW, P.A.**
515 E Las Olas Blvd., Suite 120
Fort Lauderdale, Florida 33301
T: (954) 533-4092

Ignacio Hiraldo, Esq.
(*pro hac vice forthcoming*)
IJhiraldo@Hiraldolaw.com
**IJH LAW**
1200 Brickell Ave., Suite 1950
Miami, FL 33131
T: (786) 496-4469

William Litvak (SBN 90533)
wlitvak@drllaw.com
**DAPEER ROSENBLIT LITVAK, LLP**
11500 W. Olympic Blvd., Suite 550
Los Angeles, California 90064
T: (310) 477-5575

*Attorneys for Plaintiff and the Proposed Class*