WILLIAM LITVAK, State Bar No. 90533
DAPEER ROSENBLIT & LITVAK, LLP
11500 W. Olympic Blvd., Suite 550
Los Angeles, CA 90064
E: wlitvak@drllaw.com
T: (310) 477-5575

IGNACIO HIRALDO (*pro hac vice*)
FL. Bar No. 56031
IJH LAW
1200 Brickell Ave., Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: (786) 496-4469

*Attorneys for Plaintiff and Proposed Class*

TONIA OUELLETTE KLAUSNER
(pending *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: tklausner@wsgr.com

SARA L. TOLBERT, State Bar No. 300945
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: stolbert@wsgr.com

*Attorneys for Defendant DONOTPAY, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATHEW HUFNUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DONOTPAY, INC., a Delaware Corporation<br><br>Defendant. | CASE NO.: 3:20-cv-08701-VC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**Date: April 28, 2021**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 4, 17th Floor**<br>**Judge: Hon. Vince Chhabria**<br><br>**Complaint Filed: December 9, 2020** |

Plaintiff Mathew Hufnus and Proposed Class ("Plaintiff") and Defendant DoNotPay, Inc. ("Defendant" or "DoNotPay") jointly submit this Joint Case Management Statement pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, ADR Local Rule 3-5, and the Court's Order Setting the Case Management Conference dated April 5, 2021 (Dkt. 20).

1. **Jurisdiction & Service**

The parties agree that this Court has federal question jurisdiction over Plaintiff's claims, which are brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. There are no issues relating to personal jurisdiction or venue. There are no parties remaining to be served.

2. **Facts**

Plaintiff's Statement:

Plaintiff received multiple robo-text messages from Defendant, which promoted Defendant's services. Defendant utilized an automated telephone dialing system ("ATDS") to call her cell phone, in violation of 47 U.S.C. § 227(b). Defendant's unlawful telemarketing practices have targeted thousands of people as demonstrated by the consumer complaints contained in the operative pleading. To obtain equitable and legal relief for all those similarly situated, Plaintiff brings this case as a class action.

Defendant's Statement:

Defendant DoNotPay operates a website and mobile phone app that utilizes artificial intelligence to help consumers solve a variety of problems, such as fighting parking tickets, cancelling auto-renew subscriptions, and obtaining refunds. DoNotPay's goal is to empower consumers to protect their financial interests against furtive business tactics.

Plaintiff Mathew Hufnus started creating a DoNotPay account by downloading the DoNotPay app, typing in his phone number and clicking a button. He did not complete registration by providing the requisite payment information, so DoNotPay sent him a single, multi-part text message to suggest that he complete his registration. Because Plaintiff voluntarily provided his phone number to DoNotPay in connection with creating an account, DoNotPay had sufficient

consent to send a text message to facilitate completion of the registration. *See, e.g., Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 U.S. Dist. LEXIS 159007 (N.D. Cal. Nov. 24, 2015) ("text sent solely for the purpose of allowing the recipient to complete a registration process that he or she initiated" is not telemarketing and therefore provision of cell phone number provided consent for text).

Additionally, the wireless call provision of the TCPA, which is separate from the "robo-call" and "Do Not Call" provisions, is inapplicable to DoNotPay's texts because DoNotPay does not use equipment that has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers" as is required under the TCPA. *See* 47 U.S.C. § 227(a).

3. **Impact of *Facebook v. Duguid***

Pursuant to the Court's Order Setting the Case Management Conference dated April 5, 2021 (ECF No. 20), the parties address the impact of the Supreme Court's *Duguid* decision:

Plaintiff's Statement:

Plaintiff submits that the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511, 2021 U.S. LEXIS 1742 (Apr. 1, 2021) is favorable to Plaintiff's case in that the human intervention doctrine has been abolished: "Duguid contends that ordinary cell phones are not autodialers under his interpretation because they cannot dial phone numbers automatically and instead rely on human intervention….**We decline to interpret the TCPA as requiring such a difficult line-drawing exercise around how much automation is too much**." *Facebook, Inc. v. Duguid*, No. 19-511, 2021 U.S. LEXIS 1742, at n. 6 (Apr. 1, 2021) (emphasis added). Thus, any human intervention defense that Defendant may have tried to advance has now been foreclosed.

Further, the opinion is favorable to Plaintiff's case in that it rejects the narrow interpretation of what constitutes an ATDS as interpreted by the Third, Seventh, and Eleventh Circuits. Those Circuits held that an ATDS must have the capacity to generate random or sequential telephone numbers in every instance. *See Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("More persuasive, however, is the point that some systems 'store' randomly generated numbers for much longer than a few fleeting moments."); *Glasser v. Hilton Grand Vacations Co., LLC*, 948

F.3d 1301, 1310-11 (11th Cir. 2020) ("Under this reading, § 227(a) occupied the waterfront, covering devices that randomly or sequentially generated telephone numbers and dialed those numbers, or stored them for later dialing."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("Notably absent, however, is any explanation of how the Email SMS System actually did or could generate random telephone numbers to dial.").

The Supreme Court rejected such a narrow reading of the statute and, consistent with the plain language of the statute, repeatedly stated that an ATDS is equipment with the following capacity: (1) store telephone numbers; (2) using a random or sequential number generator. Specifically, the Supreme Court held and stated as follows:

- *Held*: To qualify as an "automatic telephone dialing system" under the TCPA, a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator. *Duguid*, No. 19-511, 2021 U.S. LEXIS 1742, at *2.

- We conclude that the clause modifies both, specifying how the equipment must either "store" or "produce" telephone numbers. Because Facebook's notification system neither stores nor produces numbers "using a random or sequential number generator," it is not an autodialer. *Id*. at *10.

- We hold that a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. *Id*. at *19.

In other words, contrary to the holdings of *Glasser, Gadelhak, and Dominguez*, the Supreme Court held that an ATDS need not have generated the numbers it dialed randomly or sequentially as long as it has the capacity "to store a telephone number using a random or sequential number generator." *Duguid*, No. 19-511, 2021 U.S. LEXIS 1742, at *2.

Moreover, *Duguid* makes clear that equipment that utilizes a random or sequential number generator to determine the order in which to "pick phone numbers" from a list of numbers to dial is an ATDS. *See* 2021 U.S. LEXIS 1742, at n. 7 ("For instance, **an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list**. It would then store those numbers to be dialed at a later time.") (citing Brief for

Professional Association for Customer Engagement et al. as *Amici Curiae* 15-21 (discussing "a method of blending random and sequential number generator technologies to dial telephone numbers within a defined number range. The numbers would be initially dialed in a random manner, but then at a certain point any remaining undialed numbers are dialed in a sequential manner.")); *see also* 2021 U.S. LEXIS 1742, at n. 6 ("But all devices require some human intervention, whether it takes the form of programming a cell phone to respond automatically to texts received while in 'do not disturb' mode or commanding a computer program to produce **and dial phone numbers at random**.").

As alleged in the operative First Amended Complaint, the SMS platform utilized by Defendant to violate the TCPA has the capacity to (1) store telephone numbers; (2) using a random of sequential number generator. Finally, *Duguid* makes clear that the proper question is not whether is function was used, but whether the system had such a "capacity".

Consistent with the above, the only court to have analyzed this issue post *Duguid* held that dismissal at the motion to dismiss stage was not warranted. *See Montanez v. Future Vision Brain Bank,* Civil Action No. 20-cv-02959-CMA-MEH, 2021 U.S. Dist. LEXIS 67091, at *15-21 (D. Colo. Apr. 7, 2021). Thus, the ATDS question will require discovery, including, but not limited to, (1) the deposition of Defendant's CEO who created the text messaging platform at issue and any other individuals that helped create software, (2) the review of the platform's source code by Plaintiff's expert. Plaintiff submits that this Court should ultimately rule on the issue on a complete record and not based on any unsubstantiated representations made by Defendant.

Defendant's Statement:

*Duguid* resolved the circuit split about whether the TCPA's definition of an "automatic telephone dialing system" ("autodialer") encompasses equipment that can merely store and automatically dial telephone numbers--as the Ninth, Second and Sixth Circuits had held--or whether it must be capable of using a random or sequential number generator to either store and dial random or sequential telephone numbers, or produce and dial random or sequential telephone numbers. The Court adopted the narrow interpretation followed by the Third, Seventh and Eleventh Circuits and ruled that to qualify as an autodialer, "a device must have the capacity either

to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential generator." *Duguid*, 2021 U.S. LEXIS 1742, at *1. *Duguid* overruled the Ninth Circuit's broad interpretation of an ATDS, which would have swept smart phones and virtually all text messaging systems into the scope of the TCPA's wireless number provision. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018). As the Court explained, "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Duguid*, 2021 U.S. LEXIS 1742, at *14.

Contrary to Plaintiff's statement herein, *Duguid* in no way rejected the autodialer interpretation adopted by the Third, Seventh, and Eleventh Circuits—those Courts interpreted the statute narrowly, correctly, and consistently with the Supreme Court's reading. *See Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("More persuasive, however, is the point that some systems 'store' randomly generated numbers for much longer than a few fleeting moments."); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1310-11 (11th Cir. 2020) ("Under this reading, § 227(a) occupied the waterfront, covering devices that randomly or sequentially generated telephone numbers and dialed those numbers, or stored them for later dialing."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("Notably absent, however, is any explanation of how the Email SMS System actually did or could generate random telephone numbers to dial."). Rather, the Supreme Court specifically "granted certiorari to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers." *Duguid*, 2021 U.S. LEXIS 1742, at *9-10. By overruling the Ninth Circuit and concluding that the system must use a random or sequential number generator, the Court sided with the Third, Seventh and Eleventh Circuits. For this reason, the Court subsequently granted cert and vacated decisions from the Second (*Duran v. La Boom Disco*) and Sixth Circuits (*Allan v. Pennsylvania Higher Education Assistance Agency*) that had followed the Ninth Circuit's broad interpretation, while simultaneously denying cert and allowing to stand decisions from the Seventh (*Gadelhak v. AT&T*) and Eleventh Circuits (*Glasser v. Hilton Grand Vacations*). SCOTUS Order List, 4/19/21. Had the Supreme Court "rejected" the

Seventh and Eleventh Circuits' holdings that to qualify as an autodialer a system must have the capacity to generate random or sequential telephone numbers, surely it would have vacated those decisions. Moreover, the *Duguid* opinion itself repeatedly references random or sequential telephone numbers. *See Duguid*, 2021 U.S. LEXIS 1742, at \*7, 10-12. And it relies in part on the legislative history of the TCPA, which targeted a specific type of telemarketing equipment that would generate and automatically dial random telephone numbers or sequential telephone numbers, thereby "dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *Duguid*, 2021 U.S. LEXIS 1742, at \*14; *see id.* at 6-7 ("This case concerns 'automatic telephone dialing systems' (hereinafter autodialers), which revolutionized telemarketing by allowing companies to dial random or sequential blocks of telephone numbers automatically. Congress found autodialer technology to be uniquely harmful. It threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.' H. R. Rep. No. 102–317, p. 24 (1991). Indeed, due to the sequential manner in which they could generate numbers, autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines. Nor were individual consumers spared: Autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees.").

Plaintiff's position that *Duguid* is "favorable" to his case turns the Decision on its head. Plaintiff relies exclusively on a statement in a footnote that is dicta and taken out of context to assert that "equipment that utilizes a random or sequential number generator to determine the order in which to 'pick phone numbers' from a list of numbers to dial is an ATDS." Under Plaintiff's position, any texting technology that selects and creates SMS packets would be an autodialer for purposes of the TCPA, even if the telephone numbers themselves were specific, targeted phone numbers and not random or sequential phone numbers generated by a random or sequential number generator. This newly-minted broad autodialer interpretation is at odds not only with the remainder of the Court's opinion, but also with the text to which the footnote is associated and the brief to which it cites. The text considers whether it makes sense for a random or sequential number generator to "store" phone numbers. The Court agrees "that as a matter of ordinary parlance, it is

odd to say that a piece of equipment 'stores' numbers using a random number 'generator.'" *Duguid*, 2021 U.S. LEXIS 1742, at *16. But it goes on to point out that at the time Congress enacted the TCPA there was dialing equipment "that used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing)." *Id.* That equipment generated blocks of sequential telephone numbers and stored that "preproduced list" for subsequent dialing. *See* Brief for Professional Association for Customer Engagement et al. as *Amici Curiae* at 18 ("The '028 Patent shows in Figure 1 (reproduced below) an array (element 4) of telephone numbers that are sequentially generated and stored."); *see also id.* at 16-21 (addressing problems associated with dialing blocks of random or sequential telephone numbers that were reduced by patented dialer). Plaintiff is simply wrong about the implications of footnote 7. Moreover, his reading flies in the face of the limited purpose of the TCPA's autodialer definition, and the Supreme Court's rejection of Duguid's arguments for a broad reading of the autodialer definition that would have eliminated the requirement of having a capacity to generate and either store or produce random or sequential telephone numbers using a random or sequential number generator.

   Under the correct application of the Supreme Court's holding, Plaintiff has no viable claim. The First Amended Complaint alleges that DoNotPay's text messaging platform "has the capacity to utilize a random and sequential number generator in the storage of [telephone] numbers, and does in fact utilize said number generator for a variety of functions including, but not limited to, the selection and creation of SMS packets containing the target telephone numbers to be dialed by the Platform, as well as the sequential and/or random selection of telephone numbers to be dialed from a preselected list of numbers." *See* FAC ¶ 24; *id.* ¶ 25 (alleging SMS packet creation utilizes a random and/or sequential number generator). Nowhere does the FAC allege that DoNotPay's system has the capacity to generate random or sequential telephone numbers. Nor could it. The messages themselves as reproduced in the FAC show that the system sent text messages only to specific phone numbers supplied by consumers after downloading the app and beginning to sign up for a DoNotPay account. *See id.* ¶ 20. Plaintiff's claim fails as a matter of law because it lacks any allegation that DoNotPay's system has the capacity to generate random or sequential telephone

numbers – an allegation Plaintiff cannot make in good faith. *See Gadelhak*, 950 F.3d at 469 (holding that capacity to generate random or sequential telephone numbers is necessary to the autodialer statutory definition and therefore system that lacked such capability was not an autodialer); *Glasser*, 948 F.3d at 1304-05 (holding systems were not autodialers because neither randomly or sequentially generated telephone numbers and dialed those numbers, or stored them for later dialing); *Dominguez,* 894 F.3d at 119 (holding that system did not qualify as autodialer where no evidence that it did or could generate random or sequential telephone numbers).

Even under Plaintiff's misreading of *Duguid* Plaintiff's claim fails because his factual allegations are incorrect. DoNotPay does not utilize a bulk SMS platform as alleged by Plaintiff. Instead, DoNotPay created its custom texting software for the limited purpose of sending reminder texts to people who began to sign up with DoNotPay, voluntarily supplied DoNotPay with their cellphone numbers, but failed to pay for a subscription. DoNotPay's system does not use a random or sequential number generator to store telephone numbers or select them to create SMS packets.

**4.  Legal Issues**

Plaintiff's Statement:

The primary legal issues are expected to include the following:

(a) The equipment utilized by Defendant to transmit text messages to Plaintiff and members of the Class.

(b) The purpose of Defendant's text message solicitations.

(c) Whether Defendant secured the requisite express written consent to transmit the messages.

(d) The total number of text messages transmitted by Defendant to Plaintiff and the Class members.

Defendant's Statement:

DoNotPay anticipates the following issues will need to be resolved:

- Whether DoNotPay sent Plaintiff a text messages using an autodialer within the meaning of 47 U.S.C. § 227(a)(1) (1991), particularly in light of the Supreme

   Court's recent decision in *Facebook, Inc. v. Duguid*, No. 19-511, 2021 U.S. LEXIS 1742 (Apr. 1, 2021);

- Whether the text message sent to Plaintiff was a communication for the purpose of facilitating a previously contemplated transaction between the parties;
- Whether Plaintiff provided express consent to DoNotPay to send a follow-up text message after providing his telephone number; and
- Whether the class certification is appropriate under Rule 23.

**5. Motions**

Plaintiff's Statement:

After conducting sufficient discovery, Plaintiff intends to file a motion for class certification and may file a motion for summary judgment or partial summary judgment regarding liability and damages. Depending on how discovery proceeds, Plaintiff may file motions to resolve discovery disputes, motions in limine, and expert motions.

Defendant's Statement:

Plaintiff filed an Amended Complaint on April 16, 2021. ECF No. 21. Defendant anticipates filing a Motion to Dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The parties have stipulated to a briefing schedule. ECF No. 22. Should Plaintiff's claim survive, Defendant anticipates filing a motion for summary judgment or partial summary judgment on liability, and potentially motions to resolve discovery disputes, motions in limine, and expert motions.

**6. Amendment of Pleadings**

The parties proposed the deadline in the table below.

**7. Evidence Preservation**

The parties certify that they have reviewed the Northern District of California's Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably

evident in this action. Additionally, the parties confirm that they have met and conferred regarding the Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information. Counsel for Plaintiff have instructed Defendant's counsel to preserve logs of text messages between Defendant (on the one hand) and any proposed Class member (on the other hand).

8. **Disclosures**

The parties agreed to make their initial disclosures by the date in the table below.

9. **Discovery**

   a. **Discovery Taken to Date**

   None.

   b. **Scope of Anticipated Discovery**

Plaintiff's Statement:

Plaintiff anticipates that the focus of discovery will include:

(a)  electronic data regarding the text messages at issue;

(b) electronic data tracking any alleged consents to receive texts, including the logs of any servers that obtained any purported consent;

(c) electronic data regarding any transmission and/or disposition reports for the text messages at issue;

(d) Defendant's policies and procedures (if any) concerning TCPA compliance;

(e) complaints relating to Defendant's text message solicitations;

(g) email and other communications related to the allegations of this case.

Defendant's Statement:

To avoid wasting the court and party resource, discovery on the merits and class issues should await resolution of Defendant's forthcoming motion to dismiss. If this action does proceed to discovery, Defendant proposes phased discovery, with phase 1 limited to discovery on whether Defendant's texting system qualifies as an autodialer under the TCPA. Defendant anticipates that

such discovery could be limited to an expert inspection of Defendant's software, a 30(b)(6) deposition of Defendant, expert reports and depositions.  Only if Plaintiff prevailed on this motion would there be a need for full merits and class discovery, including discovery regarding Plaintiff's use and access of DoNotPay; Plaintiff's and putative class members alleged damages; Plaintiff's and class members consent to receive the at issue messages; Plaintiff's suitability as a class representative, and Plaintiff's counsel's suitability as class counsel.

    c. **Limitations or Modifications of Discovery Rules**

The Parties agree that they will serve and accept service of discovery requests and responses electronically. DoNotPay proposes to limit requests for production to 25 per side, interrogatories to 10 per side, and to eliminate requests for admission, all absent agreement of the other side or leave of court to exceed such limitations.  Plaintiff does not agree to Defendant's discovery limitations and asks the Court to adopt the limitations, to the extent applicable, outlined by the Federal Rules of Civil Procedure.

    d. **Entry of an E-Discovery Order**

Plaintiff will propose a draft e-discovery order to Defendant.

    e. **Proposed Discovery Plan**

Plaintiff proposes the schedule set forth in the table below. Defendant proposes to stay all discovery pending resolution of its anticipated Motion to Dismiss.

    f. **Identified Discovery Disputes**

No discovery has yet come due. The parties agree generally to meet and confer as to any future discovery disputes in order to try to narrow the scope of their disagreement and reduce the need for judicial intervention.

10. **Class Actions**

Plaintiff proposes the deadline for class certification in the table below.

All attorneys of record have reviewed the Procedural Guidance for Class Action Settlements.

Plaintiff's Statement:

    a. **Specific Paragraphs of Federal Rule of Civil Procedure 23**

Plaintiff will seek class certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

    b. **Description of Class**

The No Consent Class is defined as follows: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number for the purpose of promoting and/or advertising Defendant's goods and/or services.

Excluded from the classes is Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, Defendant's legal representatives, assignees, and successors, the judges to whom this case is assigned and the employees and immediate family members of all of the foregoing.

    c. **Facts Showing Plaintiff Is Entitled to Maintain the Action under Federal Rule of Civil Procedure 23(a) and (b)**

*Fed R. Civ. P. 23(a)(1), Numerosity*

Given the generic nature of the text messages received by Plaintiff and the countless Internet consumer complaints regarding Defendant's unsolicited text messages, Plaintiff has alleged in good faith that the members of the class number at least in the several thousands, but certainly not less than forty individuals.

*Fed R. Civ. P. 23(a)(2), Commonality*

Due in part to the automated, routinized nature of Defendant's telemarketing, outcome determinative questions of fact and law have the same answers for all members of a given class. These questions include but are not limited to the following:

  (a) Did Defendant utilize an ATDS to send bulk SMS text messages to Plaintiff and the Class Members? (Yes)

  (b) Did Defendant send text messages to Plaintiff's and the Class members' cellular telephones? (Yes)

(c) Was the purpose of the calls to the class member telemarketing? (Yes)

(d) Were the calls to the class member necessitated by an emergency? (No)

(e) Did Plaintiff and the Class members ever provide Defendant their prior express written consent before being text messaged? (No)

(f) What is the minimum statutory damages per violation the class member is entitled to? ($500)

(g) Were Defendant's violations of the class member's rights under the TCPA knowing or willful? (Yes)

(h) How much statutory damages per violation should the Court award the class member? ($1,500)

(i) Should Defendants be enjoined? (Yes)

*Fed R. Civ. P. 23(a)(3), Typicality*

Also due in part to the automated, routinized nature of Defendant's telemarketing, Plaintiff's claims are typical of those of the classes. They arise from the same course of conduct as fellow class members' and seek redress based on the same legal and equitable remedies as fellow class members.'

*Fed R. Civ. P. 23(a)(4), Adequacy*

Plaintiff is an adequate class representative, has no conflict with either class, and is committed to seeing this matter through to a remedy for all class members. Plaintiff's counsel have litigated TCPA class actions across the country, reaching classwide settlements in dozens of cases—generally for millions or tens of millions of dollars.

*Fed. R. Civ. P. 23(b)(3), Predominance*

For several of the same reasons that commonality is satisfied, predominance is satisfied.

*Fed. R. Civ. P. 23(b)(3), Superiority*

For every 18 million robocalls, there's only one TCPA lawsuit in federal court. *Compare* Mike Snider, *Robocalls Rang up a New High in 2019. Two or More Daily Is Average in Some States*, USA Today (Jan. 15, 2020), https://www.usatoday.com/story/tech/2020/01/15/robocallsamericans- got-58-5-billion-2019/4476018002/ (58.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2019 and*

*Year in Review: How Did Your Favorite Statutes Fare?*, https://webrecon.com/webrecon-stats-for-dec-2019-and-year-in-review-how-did-your-favoritestatutes-fare/ (3,267 TCPA complaints).

That is so in part because "the statutory damages provided by the TCPA are not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation." *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 U.S. Dist. LEXIS 188999, at *29 (N.D. Cal. Aug. 22, 2016) (quotation marks omitted) (collecting cases).

Defendant's Statement: DoNotPay does not believe class treatment is appropriate for numerous reasons and intends to vigorously oppose any motion for certification.

### 11. Related Cases

The parties are not aware of any related cases or proceedings.

### 12. Relief

Plaintiff's Statement:

Plaintiff seeks all of the relief prayed for in the complaint, including an injunction barring Defendant from further automated telemarketing. Plaintiff seeks statutory damages of $1,500 per knowing or willful violation and $500 per other violation of the TCPA. See 47 U.S.C. § 227(b)(3), (c)(5).

Defendant's Statement:

DoNotPay disputes that Plaintiff is entitled to any monetary or injunctive relief. DoNotPay seeks an order dismissing the individual action with prejudice.

### 13. Settlement and ADR

This case has not been assigned to the ADR Multi-Option Program, and the parties have not yet engaged in ADR. The parties propose that they engage in private mediation should the Court deny Defendant's anticipated Motion to Dismiss.

### 14. Consent to Magistrate Judge For All Purposes

Plaintiff did not consent to a magistrate judge and filed a declination. ECF No. 8.

### 15. Other References

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**16. <u>Narrowing of Issues</u>**

<u>Plaintiff's Statement</u>:

Plaintiff believes liability and damages may be resolved by motion after discovery has been taken. Plaintiff believes the presentation of evidence at trial is best addressed after the Court rules on class certification. Class members may be unfairly and irreparably prejudiced if discovery into records of Defendant's robocalls to them is delayed. Many telecommunications providers preserve calling records for less time than the proposed four-year class period. *See Dep't Justice, Retention Periods of Major Cellular Service Providers (Mar. 2011)*, available at https://cryptome.org/ispspy/cellular-spy3.pdf.

For the specialty telecommunications vendors favored by TCPA violators, even shorter retention periods are considered a feature, not a bug. In proposed TCPA class actions, courts are therefore wary of defendants' requests to avoid or delay classwide discovery. *E.g., Order, Dickson v. Direct Energy, Inc.*, No. 5:18-cv-00182-GJL (N.D. Ohio May 21, 2018) ("granting plaintiff's motion to compel defendant Total Marketing Concepts, LLC to gather/retrieve all telecommunication records from their vendor to avoid the destruction of records that identify putative class members"); Order, *Fitzhenry v. Career Education Corp.*, No. 14-cv-10172 (N.D. Ill. Feb. 25, 2016), ECF No. 101 ("The stay on discovery is modified for the limited purpose of requiring Defendant to obtain and retain records of all outbound calls that were made for purposes of generation of leads for education services.").

In particular, in proposed TCPA class actions, courts routinely deny requests to bifurcate discovery between individual and class claims. *E.g., Becker v. Keller Williams Realty*, 2020 U.S. Dist. LEXIS 41767 (S.D. Fla. March 11, 2020); *Katz v. Gokul Rx Ltd. Liab. Co.*, No. 8:19-cv2210-T-35SPF, 2020 U.S. Dist. LEXIS 5957, at *4 (M.D. Fla. Jan. 14, 2020); *Renvall v. Albertsons Cos.*, No. 3:18-cv-00809-H-NLS, 2018 U.S. Dist. LEXIS 129320 (S.D. Cal. Aug. 1, 2018); *Ahmed v. HSBC Bank United States*, No. ED CV 15-2057 FMO (SPx), 2018 U.S. Dist. LEXIS 12589, at *9

(C.D. Cal. Jan. 12, 2018); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG (DMR), 2015 U.S. Dist. LEXIS 43908, at *8-9 (N.D. Cal. Apr. 1, 2015).

Defendant's Statement:

The Amended Complaint should be dismissed for failure to state a claim. If the case proceeds past the pleadings phase, DoNotPay proposes that the case can be narrowed, and potentially resolved, by phasing the case to first address the autodialer element of Plaintiff's claim before engaging in other merits or class related discovery. There is unlikely to be any factual dispute as to how DoNotPay's system works to send text messages, so the question of whether DoNotPay's system is an autodialer can be resolved on summary judgment with little discovery.

**17. Expedited Trial Procedure**

The parties do not propose that this case proceed under the Expedited Trial Procedure of General order No. 64 Attachment A.

**18. Scheduling**

Pursuant to Judge Chhabria's Standing Order for Civil Cases, the parties propose the following schedule. DoNotPay proposes a stay of discovery pending the Court's decision on its forthcoming motion to dismiss and limited discovery if the Court denies DoNotPay's motion to dismiss. To the extent the Court declines DoNotPay's request to stay discovery pending resolution of its anticipated motion to dismiss, DoNotPay submits the below dates.

| Event | Plaintiff Proposed Date | Defendant Proposed Date |
|---|---|---|
| Deadline to serve initial disclosures | May 1, 2021 | May 1, 2021 |
| Last day to join other parties and to amend pleadings | June 1, 2021 | June 1, 2021 |
| Phase I Discovery Start Date | N/A | 1 day after order on motion to dismiss |
| Phase I Discovery End Date | N/A | 120 days after order on motion to dismiss |
| Last day for Plaintiff to exchange Federal Rule of Civil Procedure 26(a)(2) expert witness reports on Phase I Issues | N/A | 14 days after Phase I Discovery End Date |

| | | |
|---|---|---|
| Last day for Defendant to exchange Federal Rule of Civil Procedure 26(a)(2) expert witness reports on Phase I Issues | N/A | 28 days after Phase I Discovery End Date |
| Deadline to complete expert depositions re Phase I Issues | N/A | 14 days after exchange of rebuttal expert reports |
| Last date to file dispositive motion re Phase I issues | N/A | 14 days after completion of Expert Depositions re Phase I Issues |
| Last day to exchange Federal Rule of Civil Procedure 26(a)(2) expert witness reports (on issues on which the producing party would bear the burden of proof at trial) | November 1, 2021 | November 1, 2021 |
| Last day to exchange rebuttal expert reports (on issues on which the rebutting party would not bear the burden of proof at trial) | December 1, 2021 | December 1, 2021 |
| Deadline to conduct private mediation | January 1, 2022 | January 1, 2022 |
| Expert discovery cutoff | February 1, 2022 | February 1, 2022 |
| Case Management Conference | February 2, 2022 at 10:00am | February 2, 2022 at 10:00am |
| Last day to file motion for class certification | February 15, 2022 | February 15, 2022 |
| Fact discovery cutoff | March 1, 2022 | March 1, 2022 |
| Last date to file dispositive motions | April 7, 2022 | April 7, 2022 |
| Opposition to dispositive motion | May 5, 2022 | May 5, 2022 |
| Reply to dispositive motion | May 19, 2022 | May 19, 2022 |
| Hearing on dispositive motions | May 26, 2022 at 10:00am | May 26, 2022 at 10:00am |
| Motions in Limine | July 11, 2022 | July 11, 2022 |
| Oppositions to Motions in Limine | July 18, 2022 | July 18, 2022 |
| Pretrial Statement | July 25, 2022 | July 25, 2022 |
| Pretrial Conference | August 1, 2022 at 1:30pm | August 1, 2022 at 1:30pm |

| Trial | August 8, 2022 | August 8, 2022 |

### 19. Trial

Plaintiff has requested a jury trial under Fed. R. Civ. P. 38(b)(1). The length of the trial is expected to be 6 days.

### 20. Disclosure of Non-Party Interested Entities or Persons

DoNotPay filed its Certification of Interested Entities or Persons on January 7, 2021 and identified AH Capital Management, LLC and Coatue Management, LLC as entities with a financial interest in this case. ECF No. 14.

### 21. Professional Conduct

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 22. Other

The Parties do not believe that there are other matters to discuss at this time.

Dated: April 21, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Sara L. Tolbert*
    Sara L. Tolbert

*Attorneys for Defendant*
*DONOTPAY, INC.*

IJH LAW

By: */s/ Ignacio J. Hiraldo*
    Ignacio Hiraldo

*Attorneys for Plaintiff and Proposed Class*

**Signature Attestation**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

By: */s/ Ignacio J. Hiraldo*
Ignacio J. Hiraldo