TONIA OUELLETTE KLAUSNER (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Facsimile:  (212) 999-5899
Email:        tklausner@wsgr.com

SARA L. TOLBERT, State Bar No. 300945
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:    (650) 565-5100
Email:        stolbert@wsgr.com

Attorneys for Defendant
DONOTPAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATHEW HUFNUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DONOTPAY, INC., a Delaware Corporation<br><br>Defendant. | CASE NO.:  3:20-cv-08701-VC<br><br>**DEFENDANT DONOTPAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**Date: June 10, 2021**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 4, 17th Floor**<br>**Judge: Hon. Vince Chhabria**<br><br>**Complaint filed: December 9, 2020** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ 1

STATEMENT OF ISSUES ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.   STATEMENT OF FACTS .............................................................................. 2

    A.   Factual Background ............................................................................ 2

    B.   Procedural History ............................................................................. 3

II.  LEGAL STANDARD .................................................................................... 3

III. ARGUMENT .............................................................................................. 4

    A.   The TCPA's Autodialer Definition Requires a Capacity to Generate Random or Sequential Phone Numbers ................................................. 6

        1.   Congress Intends the Autodialer Definition to Cover Systems That Generate and Dial Random or Sequential Phone Numbers ....................... 6

        2.   The FCC Makes Clear That the Autodialer Definition Requires a Capacity to Generate and Dial Random or Sequential Phone Numbers ....... 7

        3.   The FCC Makes Confusing Statements About the Autodialer Definition Leading to Widespread Confusion in the Courts ........................ 8

        4.   The U.S. Supreme Court Settles the Decades-Long Dispute: A System Qualifies as an Autodialer Only if it Can Generate and Dial Random or Sequential Phone Numbers ...................................... 11

    B.   The FAC Fails to Plausibly Allege That DoNotPay's System Has the Capacity to Generate Random or Sequential Phone Numbers and Send Them Texts ..................................................................................... 14

IV.  CONCLUSION .......................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*ACA Int'l v. FCC,*
    885 F.3d 687 (D.C. Cir. 2018) .......................................................................................... 9

5

*Allan v. Pa. Higher Educ. Assistance Agency,*

6
    968 F.3d 567 (6th Cir. 2020)....................................................................................... 10, 13

7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................... 3, 4

8

*Baranski v. NCO Fin. Sys.*

9
    No. 13 CV 6349, 2014 U.S. Dist. LEXIS 54321
    (E.D.N.Y. Apr. 18, 2014) ................................................................................................. 6

10

*Baranski v. NCO Fin. Sys.,*

11
    No. 13 CV 6349, 2014 U.S. Dist. LEXIS 37880
    (E.D.N.Y. Mar. 21, 2014) ................................................................................................ 6

12

*Bell Atl. Corp. v. Twombly,*

13
    550 U.S. 544 (2007) ...................................................................................................... 3, 4

14

*Canary v. Youngevity Int'l, Inc.,*
    No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429

15
    (N.D. Cal. Mar. 20, 2019) ............................................................................................... 4

16

*Dominguez v. Yahoo, Inc.,*
    894 F.3d 116 (3d Cir. 2018) ..................................................................................... 11, 13

17

*Duguid v. Facebook, Inc.,*

18
    926 F.3d 1146 (9th Cir. 2019) .................................................................................. 11, 12

19

*Duguid v. Facebook, Inc.,*
    No. 15-cv-00985-JST, 2017 U.S. Dist. LEXIS 22562

20
    (N.D. Cal. Feb. 16, 2017) .......................................................................................... 5, 11

21

*Duran v. La Boom Disco, Inc.,*
    955 F.3d 279 (2nd Cir. 2020) .................................................................................... 10, 13

22

*Facebook, Inc. v. Duguid,*

23
    2021 U.S. LEXIS 1742 (Apr. 1, 2021)................................................................. 1, 2, 3, 4, 7,
                                                   11, 12, 13, 14

24

*Fields v. Mobile Messengers Am., Inc.,*

25
    No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 180227
    (N.D. Cal. Dec. 23, 2013) ............................................................................................... 8

26

*Gadelhak v. AT&T Servs. Inc.,*

27
    950 F.3d 458 (7th Cir. 2020)....................................................................................... 10, 13

28

*Glasser v. Hilton Grand Vacations Co.*,
    948 F.3d 1301 (11th Cir. 2020)................................................................. 10, 13

*Ibey v. Taco Bell Corp.*,
    No. 12-CV-0583- H (WVG), 2012 U.S. Dist. LEXIS 91030
    (S.D. Cal. June 18, 2012) ................................................................................ 8

*In re Rules and Regulations Implementing the Telephone*
    *Consumer Protection Act of 1991*,
    10 FCC Rcd 12391 (1995) ............................................................................... 7

*In re Rules and Regulations Implementing the Telephone*
    *Consumer Protection Act of 1991*,
    18 FCC Rcd. 14014 (2003) .............................................................................. 8

*In re Rules and Regulations Implementing the Telephone*
    *Consumer Protection Act of 1991*,
    23 FCC Rcd 559 (2008) ................................................................................... 8

*In re Rules and Regulations Implementing the Telephone*
    *Consumer Protection Act of 1991*,
    27 FCC Rcd 15391 (2012) ............................................................................... 8

*In re Rules and Regulations Implementing the Telephone*
    *Consumer Protection Act of 1991*,
    30 FCC Rcd 7961 (2015) .............................................................................. 8, 9

*In re Rules and Regulations Implementing the Telephone*
    *Consumer Protection Act of 1991*,
    7 FCC Rcd 8752 (1992) ............................................................................... 7, 8

*Mantha v. QuoteWizard.com, LLC*,
    No. 19-12235-LTS, 2020 U.S. Dist. LEXIS 45481
    (D. Mass. Mar. 16, 2020) ................................................................................ 6

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018)................................................................... 10, 11

*Mosley v. Gen. Revenue Corp.*,
    No. 1:20-cv-01012-JES-JEH, 2020 U.S. Dist. LEXIS 127055
    (C.D. Ill. July 20, 2020) .................................................................................. 6

*Naiman v. Freedom Forever, LLC*,
    No. 19-cv-00256-JSC, 2019 U.S. Dist. LEXIS 69728
    (N.D. Cal. Apr. 24, 2019)................................................................................ 5

*Snow v. Gen. Elec. Co.*,
    No. 5-18-CV-511-FL, 2019 U.S. Dist. LEXIS 99760
    (E.D.N.C. June 14, 2019) ................................................................................ 6

*Sprewell v. Golden State Warriors*,
    No. 99-15602, 2001 U.S. App. LEXIS 20434 (9th Cir. 2001) ......................... 4

*Suttles v. Facebook, Inc.*,
    461 F. Supp. 3d 479 (W.D. Tex. 2020)............................................................ 6

DEFENDANT DONOTPAY, INC.'S
MOTION TO DISMISS FAC
    -iii-
    CASE NO. 3:20-cv-08701-VC

*Thompson v. Permanente Med. Grp., Inc.*,
   No. 12-CV-01301-JST, 2013 U.S. Dist. LEXIS 60909
   (N.D. Cal. Apr. 29, 2013) ................................................................................ 4

*Trumper v. GE Capital Retail Bank*,
   79 F. Supp. 3d 511 (D.N.J. 2014) .................................................................... 6

*Weisberg v. Stripe, Inc.*,
   No. 16-cv-00584-JST, 2016 U.S. Dist. LEXIS 96794
   (N.D. Cal. July 25, 2016) ................................................................................ 5

**STATUTES**

47 U.S.C. § 227 .................................................................................. 1, 3, 4, 7, 11

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 3

**MISCELLANEOUS**

Ariel Bogle, *It's been 25 years since the first-ever text message
   and the kids are alright,* ABC SCIENCE (Dec. 2, 2017),
   https://www.abc.net.an/news/science/2017-12-03/
   after-25-years-of-sms-were-still-anxious-about-text-speak/9205734 ................ 13

Brief for Professional Association for Customer Engagement et al. as Amici Curiae
   Supporting Petitioner, *Facebook, Inc. v. Duguid*, (9th Cir. Sep. 10, 2020)
   (No. 19-511) ................................................................................................... 14

Brief of Respondent United States Supporting Petitioner, *Facebook, Inc. v. Duguid*,
   (9th Cir. Sept. 4, 2020) (No. 19-511) ............................................................. 12

H.R. Rep. No. 101-633 (1990) ............................................................................ 7

H.R. Rep. No. 102-317 (1991) ........................................................................ 6, 7

S. Rep. No. 102-178 (1991) ............................................................................ 6, 7

Telemarketing/Privacy Issues: Hearing Before the Subcomm. on
   Telecommunications and Finance of the House Comm. on Energy and
   Commerce, 102d Cong., 1st Sess. 112-114 (1991)
   (statement of Michael J. Frawley, President, Gold Coast Paging) ...................... 7

Telephone Advertising and Consumer Rights Act and Telephone Consumer
   Privacy Rights Act: Hearing on S. 1410 and S. 1462 Before the Subcomm.
   on Communications of the S. Comm. on Commerce, Science, and
   Transportation, 102nd Cong. 45-46 (1991)
   (Statement of Thomas Stroup, President, Telocator) ....................................... 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 10, 2021, at 2:00 p.m., before the Honorable Vince Chhabria, U.S. District Court, the Northern District of California, Defendant DoNotPay, Inc. ("DoNotPay") will, and hereby does, move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint (Dkt. 21) with prejudice for failure to state a claim. This motion is based on this Notice and Motion, the supporting Memorandum of Points and Authorities, all pleadings, records, and papers in this action and any other matters properly before the Court.

**STATEMENT OF ISSUES**

1.     Whether Plaintiff has plausibly alleged that the text message he received asking him to complete his registration for DoNotPay, a website and mobile phone app that utilizes artificial intelligence to help consumers solve various problems, was sent using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1), which is a necessary element of Plaintiff's Telephone Consumer Protection Act ("TCPA") claim.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff alleges that DoNotPay violated the TCPA by sending a text message to the phone number he provided when beginning to register for DoNotPay's service. But that claim runs headlong into the Supreme Court's April 9-0 decision in *Facebook, Inc. v. Duguid*, No. 19-511, 2021 U.S. LEXIS 1742 (Apr. 1, 2021), which reversed the Ninth Circuit's earlier broad reading of the TCPA's "automatic telephone dialing system" (hereinafter "autodialer") definition. As the Court held, any autodialer "must have the capacity to generate random or sequential phone numbers." *Id.* at *9-10 (footnote omitted). Plaintiff's Amended Complaint contains no such allegation. Nor does it plausibly allege that DoNotPay's system has such capability. The Amended Complaint should thus be dismissed for failure to state a claim.

*Duguid* resolved a decades-long dispute among the federal courts over the meaning of the TCPA's "autodialer" definition. *Id.* The Ninth, Second, and Sixth Circuits had read the definition broadly, such that merely alleging use of a system that stores and automatically dials any kind of phone numbers—random, sequential, or specific—was sufficient to state a TCPA claim. The Seventh, Eleventh, and Third Circuits, by contrast, read the autodialer definition to require use of

1   a number generator to generate and either store (for later dialing) or produce (for immediate

2   dialing) phone numbers. The Supreme Court sided with the Seventh, Eleventh and Third Circuits,

3   rejecting the other circuits' broader view. As the Court explained, Congress enacted the autodialer

4   provision (one of multiple TCPA provisions prohibiting certain calls without consent) to "target a

5   unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up

6   all the sequentially numbered lines at a single entity. Expanding the definition of an autodialer to

7   encompass any equipment that merely stores and dials telephone numbers would take a chainsaw

8   to these nuanced problems when Congress meant to use a scalpel." *Id.* at *14.

9        Unable to rely on prior Ninth Circuit authority to advance his claim, Plaintiff asks this

10  Court to be the first in the country to adopt a newly-minted autodialer interpretation that would

11  cover virtually all text messaging platforms—and likely all smartphones—even though they

12  cannot generate and send text messages to random or sequential phone numbers. But as the

13  Supreme Court has now explained, this is precisely the type of expansive autodialer interpretation

14  that Congress did not intend. Under *Duguid*, autodialer systems "must have the capacity to

15  generate random or sequential phone numbers." *Id*. at *9-10. Plaintiff does not (and cannot) make

16  such an allegation. Indeed, the complaint makes clear that, much like Facebook's login

17  notifications at issue in *Duguid*, DoNotPay's system sends text messages only to the specific

18  phone numbers that people provide when registering with DoNotPay. It would make no sense for

19  DoNotPay to send such messages to random or sequential blocks of phone numbers—the harm

20  Congress sought to address in enacting the TCPA's autodialer restriction. Because the Amended

21  Complaint lacks any allegations making plausible that DoNotPay's texting software can generate

22  and text random or sequential phone numbers, it fails to state a claim.

23  **I.      STATEMENT OF FACTS**

24          **A.      Factual Background**

25          Defendant DoNotPay operates a website and mobile phone app that utilizes artificial

26  intelligence to help consumers solve a variety of problems, such as fighting parking tickets,

27  cancelling auto-renew subscriptions, or obtaining refunds. DoNotPay's goal is to empower

28  consumers to protect their financial interests against furtive business tactics. Plaintiff Mathew

Hufnus alleges that DoNotPay sent him a single multi-part text message without his prior express written consent in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Dkt. 21 ("FAC") ¶¶ 11-12, 15, 47. He insists that the use of an autodialer to send this message is self-evident because the text is "impersonal and generic," suggesting the same message was sent to others who, like Plaintiff, started to sign up for DoNotPay but did not complete their registration. *Id.* ¶¶ 18-20. According to Plaintiff, DoNotPay's system utilizes an autodialer because it allegedly uses a random or sequential number generator to select specific targeted phone numbers from a stored list, create SMS packets, determine the sequence in which the SMS packets will be transmitted (during which time the packets may be stored in a queue), and generate random or sequential identification numbers that it assigns to each packet. *See id.* ¶¶ 22-28. The FAC does not allege or contain any facts plausibly suggesting that DoNotPay's system uses a random or sequential number generator to store or produce, and send text messages to, random or sequential phone numbers.

### B.      Procedural History

On December 9, 2021, Plaintiff filed his first complaint alleging violations of the TCPA, 47 U.S.C. § 227. Dkt. 1. That Complaint did not allege use of a random or sequential number generator at all. Instead, it explicitly invoked the Ninth Circuit's expansive autodialer interpretation, and alleged only that the texts at issue were automated and sent *en masse* without human intervention. *Id.* ¶¶ 23-24, 31, 33, 36. The Court stayed the case pending the Supreme Court decision in *Duguid*. Dkt. 18. Following *Duguid*, Plaintiff filed a First Amended Complaint, relying on a novel theory of what qualifies as an autodialer under the TCPA. *See* Dkt. 21.

## II.      LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not satisfied where the facts alleged in the complaint merely support a "sheer possibility that a defendant has acted

1  unlawfully" or where the complaint pleads facts that are "'merely consistent with' a defendant's

2  liability." *Id*. In addressing a motion to dismiss, a court need not "accept as true allegations that

3  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

4  *Golden State Warriors*, No. 99-15602, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. 2001).

5  Dismissal is appropriate "where the complaint lacks . . . sufficient facts to support a cognizable

6  legal theory." *Thompson v. Permanente Med. Grp., Inc.*, No. 12-CV-01301-JST, 2013 U.S. Dist.

7  LEXIS 60909, at *5 (N.D. Cal. Apr. 29, 2013).

8  **III.    ARGUMENT**

9       The FAC fails to state a claim because Plaintiff's factual allegations do not support a

10  cognizable legal theory. Plaintiff asserts a violation of 47 U.S.C. § 227(b)(1)(A)—the TCPA

11  provision governing calls to wireless phone numbers made "using any automatic telephone

12  dialing system or an artificial or prerecorded voice." *Id.* Plaintiff does not allege that he received

13  any artificial or prerecorded voice calls, *i.e.*, "robocalls." Rather, he alleges that DoNotPay sent

14  him text messages using an "automatic telephone dialing system." FAC ¶¶ 43-45. The TCPA

15  defines "automatic telephone dialing system" as: "equipment which has the capacity – (A) to

16  store or produce telephone numbers to be called, using a random or sequential number generator;

17  and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18       The Supreme Court recently held that the phrase "using a random or sequential number

19  generator" modifies both "to store" and "to produce." *Duguid*, 2021 U.S. LEXIS 1742, at *19.

20  Accordingly, a system that stores lists of targeted numbers and sends them text messages

21  automatically but does not use a "random or sequential number generator" to store (for later

22  transmission) or produce (for immediate transmission) random or sequential phone numbers is

23  not an autodialer. *Id*. at *13-14. Rather, in all cases the system must use a "random or sequential

24  number generator." *Id*.

25       Plaintiff's threadbare recitation that DoNotPay's texting system is an autodialer "because

26  it has the capacity to (1) store telephone numbers; (2) using a random or sequential number

27  generator" (FAC ¶ 22) is insufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at

28  555; *Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429, at

*23 (N.D. Cal. Mar. 20, 2019); *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 U.S. Dist. LEXIS 69728, at *5-6 (N.D. Cal. Apr. 24, 2019). Recognizing this, the FAC goes on to explain exactly what Plaintiff means by using a random or sequential number generator to store phone numbers:

> In the context of SMS packet creation, the Platform utilizes a random and/or sequential number generator to pull and generate telephone numbers from a list of numbers and transfer those numbers to a separate list for the creation of the packets, and ultimately placement into each independent SMS packet.

> In the context of dialing the numbers, the Platform utilizes a random and/or sequential number generator to pick and designate the sequence in which to dial the telephone numbers. The Platform independently selects the rate and time at which to dial each telephone numbers [sic] *and may temporarily store the packets* in a queue when the volume exceeds capacity to deliver them.

> The Platform also has the capacity to use its random and/or sequential number generator to generate random or sequential identification numbers that it assigns to each SMS packet.

FAC ¶¶ 26-28 (emphasis added). That is not the "random or sequential number generator" covered by the TCPA's autodialer definition. As explained below, and as determined by the Supreme Court, a "random or sequential number generator" in the context of the autodialer targeted by Congress in 1991 generates *random or sequential phone numbers.* Plaintiff does not and cannot plausibly allege DoNotPay's texting software generates random or sequential telephone numbers because DoNotPay's text message reflects that DoNotPay sent him a text only because Plaintiff voluntarily provided his telephone number to DoNotPay when he started to register for DoNotPay's service.

Because Plaintiff cannot cure this defect by amendment, the Court should dismiss the Complaint with prejudice. *See, e.g.*, *Duguid*, 2017 U.S. Dist. LEXIS 22562, at *10 (dismissing TCPA complaint with prejudice for failure to plausibly allege use of an autodialer), *rev'd, Duguid v. Facebook, Inc.*, 2019 U.S. App. LEXIS 17675 (9th Cir. June 13, 2019), *rev'd, Facebook, Inc. v. Duguid*, 2021 U.S. LEXIS 1742 (U.S. Apr. 1 2021); *Weisberg v. Stripe, Inc.*, No. 16-cv-00584-JST, 2016 U.S. Dist. LEXIS 96794, at *10 (N.D. Cal. July 25, 2016) (direct targeting is

"inconsistent with the sort of random or sequential number generation required for an [autodialer]").[1]

### A.   The TCPA's Autodialer Definition Requires a Capacity to Generate Random or Sequential Phone Numbers

#### 1.   Congress Intends the Autodialer Definition to Cover Systems That Generate and Dial Random or Sequential Phone Numbers

When Congress enacted the TCPA in 1991 it sought to regulate calls to wireless numbers made using very specific types of dialing equipment. Congress targeted equipment that could "automatically dial a telephone number and deliver to the called party an artificial or prerecorded voice message." S. Rep. No. 102-178, at 2 (1991) (Senate Report); *see also* H.R. Rep. No. 102-317, at 10 (1991) (House Report) (describing the use of "automatic dialing systems"). It also targeted a specific type of automated dialing system used to dial random or sequential phone numbers that could tie up the phone lines of emergency and other public service organizations, raising serious public safety issues, as well as impose unwanted and unintended costs on paging and cellular phone services. *See* Senate Report, at 2; House Report, at 10; Telemarketing/Privacy Issues: Hearing Before the Subcomm. on Telecommunications and Finance of the House Comm. on Energy and Commerce, 102d Cong., 1st Sess. 112-114 (1991) (statement of Michael J. Frawley, President, Gold Coast Paging). As explained by the Supreme Court, autodialers:

---

[1] *Accord Baranski v. NCO Fin. Sys.*, No. 13 CV 6349, 2014 U.S. Dist. LEXIS 37880, at *10-20 (E.D.N.Y. Mar. 21, 2014) (dismissing TCPA action where plaintiff pleaded no factual allegations that permitted an inference that defendant used an autodialer); *Baranski v. NCO Fin. Sys.*, No. 13 CV 6349, 2014 U.S. Dist. LEXIS 54321, at *3 (E.D.N.Y. Apr. 18, 2014) (confirming dismissal with prejudice); *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 484-87 (W.D. Tex. 2020) (dismissing "fatally flawed" claim with prejudice because allegations of direct targeting of specific individuals weigh against inference that autodialer was used); *Snow v. Gen. Elec. Co.*, No. 5-18-CV-511-FL, 2019 U.S. Dist. LEXIS 99760, at *12-13 (E.D.N.C. June 14, 2019) (dismissing TCPA action with prejudice where allegations reflected text was intended for a targeted recipient); *Mosley v. Gen. Revenue Corp.*, No. 1:20-cv-01012-JES-JEH, 2020 U.S. Dist. LEXIS 127055, at *10 (C.D. Ill. July 20, 2020) (dismissing claim with prejudice where implausible that debt collection business would use a system that randomly and sequentially generates numbers instead of targeting specific debtors); *Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014) (dismissing complaint with prejudice where "it appears that the calls were directed at [recipient], who apparently has an account with [defendant]…the calls were not random"); *Mantha v. QuoteWizard.com, LLC*, No. 19-12235-LTS, 2020 U.S. Dist. LEXIS 45481, at *4 (D. Mass. Mar. 16, 2020) (dismissing TCPA claim with prejudice where the "number, frequency, nature, and content" of texts at issue "[did] not give rise to a plausible inference of the use of an [autodialer]").

1
2
3
4
5
6

> revolutionized telemarketing by allowing companies to dial random or sequential blocks of telephone numbers automatically. Congress found autodialer technology to be uniquely harmful. It threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.' H. R. Rep. No. 102–317, p. 24 (1991). Indeed, due to the sequential manner in which they could generate numbers, autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines. Nor were individual consumers spared: Autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees.

7  *Duguid*, 2021 U.S. LEXIS 1742, at *7.[2] To meet these concerns, Congress prohibited most

8  unsolicited artificial and prerecorded voice calls to residential and wireless numbers, and

9  prohibited most unsolicited calls to wireless numbers made using an autodialer, defined as:

10  "equipment which has the capacity --- (A) to store or produce telephone numbers to be called,

11  using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C.

12  § 227(a)(1).

13      **2.    The FCC Makes Clear That the Autodialer Definition Requires a Capacity to Generate and Dial Random or Sequential Phone Numbers**

14

15      Given Congress' objective when it enacted the autodialer provision and definition, it is not

16  surprising that for more than a decade, the FCC took the position that a device is an autodialer

17  under the TCPA only if it generates random or sequential telephone numbers to be called. *See In*

18  *re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC

19  Rcd 8752, 8773, 8776 (1992) ("1992 Order"); *In re Rules and Regulations Implementing the*

20  *Telephone Consumer Protection Act of 1991*, 10 FCC Rcd 12391, 12400-01 (1995) (stating that

21  the TCPA's autodialer provisions do not apply to calls "directed to the specifically programmed

22  contact numbers" rather than "to randomly or sequentially generated telephone numbers"). The

23  FCC determined, for example, that functions like "speed dialing" and "call forwarding" were not

24

25
26
27
28

[2] *See also* H.R. Rep. No. 101-633, at 3 (1990) ("[autodialers] often are programmed to dial sequential blocks of telephone numbers, including those of emergency public organizations and unlisted subscribers."); Telephone Advertising and Consumer Rights Act and Telephone Consumer Privacy Rights Act: Hearing on S. 1410 and S. 1462 Before the Subcomm. on Communications of the S. Comm. on Commerce, Science, and Transportation, 102nd Cong. 45-46 (1991) (Statement of Thomas Stroup, President, Telocator) (reflecting concerns with the use of a random or sequential number generator because of the potential to accidentally generate false pages to those on the organ transplant waitlist).

1  regulated by the automated-call restriction, not because they did not automatically select stored

2  telephone numbers for dialing (they did), but "because the numbers called are not generated in a

3  random or sequential fashion." 1992 Order at 8776.

4      **3.     The FCC Makes Confusing Statements About the Autodialer
              Definition Leading to Widespread Confusion in the Courts**

5

6      Then, beginning in the mid-2000s, after the TCPA had largely achieved its goal of

7  eliminating telemarketing equipment that generated and dialed random or sequential phone

8  numbers, the FCC issued three rulings containing vague and sometimes contradictory explanatory

9  statements regarding the required functionalities of an autodialer. *See generally In re Rules and*

10 *Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014

11 (2003) ("2003 Order"); *In re Rules and Regulations Implementing the Telephone Consumer*

12 *Protection Act of 1991*, 23 FCC Rcd 559, 566-567 (2008); *In re Rules and Regulations*

13 *Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 15391, 15392 n.5

14 (2012). These statements led federal district courts to apply varying tests for what qualifies as an

15 autodialer. *Compare Ibey v. Taco Bell Corp.*, No. 12-CV-0583- H (WVG), 2012 U.S. Dist.

16 LEXIS 91030, at *9 (S.D. Cal. June 18, 2012) ("To constitute an ATDS under the statute, the

17 equipment must have the capacity to store or produce telephone numbers to be sent text messages

18 and use a random or sequential number generator to text the numbers"), *with Fields v. Mobile*

19 *Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 180227, at *10-11 (N.D.

20 Cal. Dec. 23, 2013) (citing 2003 Order and concluding that it "broadened the definition of an

21 ATDS beyond mere equipment that uses 'random or sequential number generators'" to cover any

22 equipment with "the capacity to dial numbers without human intervention").

23     Frustrated by the inconsistent autodialer interpretations, 21 businesses, industry groups,

24 and individuals sought clarification from the FCC by filing petitions and requests for clarification

25 that received hundreds of comments. *In re Rules and Regulations Implementing the Telephone*

26 *Consumer Protection Act of 1991*, 30 FCC Rcd 7961 (2015) ("2015 Order") Appendix A-V. The

27 FCC ruled on these requests in an omnibus Declaratory Ruling issued in 2015. It took the position

28 that an autodialer is any system that has the "potential capacity" to "store or produce telephone

1   numbers to be called, using a random or sequential number generator, and [ ] to dial such

2   numbers." 2015 Order at 7971-7973. Throughout the 2015 Order, the FCC made clear that a

3   "random or sequential number generator" in the context of the TCPA generates and dials random

4   or sequential telephone numbers. *See, e.g.*, *id.* at 7965 ("Callers cannot avoid obtaining consumer

5   consent for a robocall simply because they are not 'currently' or 'presently' dialing *random or*

6   *sequential phone numbers*.") (emphasis added); *id.* at 7971-72 ("We reaffirm our previous

7   statements that dialing equipment generally has the capacity to store or produce, and dial *random*

8   *or sequential numbers* (and thus meets the TCPA's definition of 'autodialer') even if it is not

9   presently used for that purpose . . . .") (emphasis added); *id.* at 7974 ("the Commission has

10  already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the

11  'capacity' to dial *random and sequential numbers*, rather than the 'present ability' to do so")

12  (emphasis added) (footnotes omitted). But it failed to clearly state whether or not automatic

13  dialing from a stored list of numbers was sufficient to be an autodialer, or whether a random or

14  sequential phone number generator was always required.

15       The D.C. Circuit set aside several aspects of the 2015 Order. *ACA Int'l v. FCC*, 885 F.3d

16  687 (D.C. Cir. 2018). It set aside the FCC's "potential capacity" autodialer interpretation because

17  that boundless reading would sweep in smartphones, rendering consumers regular TCPA

18  violators. *Id.* at 697 ("The TCPA cannot reasonably be read to render every smartphone an ATDS

19  subject to the Act's restrictions, such that every smartphone user violates federal law whenever

20  she makes a call or sends a text message without advance consent."). It also set aside the 2015

21  Order's ruling as to the requisite functionalities of an autodialer as unlawfully unclear. *Id.* at 703.

22  But the Court itself declined to decide the question left open by the 2015 Order: "So which is it:

23  does a device qualify as an [autodialer] only if it can generate random or sequential numbers to be

24  dialed, or can it so qualify even if it lacks that capacity?" *See id.* at 701-03.[3]

25  _____

26  [3] The D.C. Circuit read the FCC's prior Orders interpreting the autodialer definition as not
    satisfied when the order in which numbers are called is random or sequential, but rather only when
27  the system generates random or sequential phone numbers and then dials them. *Id.* at 702 ("the
    ruling's reference to 'dialing random or sequential numbers' cannot simply mean dialing from a
    set list of numbers in random or other sequential order … . [T]he ruling's reference to 'dialing
28  random or sequential numbers' means generating those numbers and then dialing them."). The
    2015 Order could be read to require "that a device must be able to generate and dial random or
    (continued...)

Left with a clean slate, several Courts of Appeal answered the open autodialer question. The Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) answered it with the broader reading. *Marks* concluded that the phrase "using a random or sequential number generator" modifies only the verb "to produce." *Id*. at 1052. It reasoned that the autodialer definition was ambiguous, and the "structure and context of the TCPA" indicate that Congress intended to regulate "equipment that made automatic calls from lists of recipients," in addition to "equipment that dialed blocks of sequential or randomly generated numbers — a common technology at that time." *Id*. at 1051; *see also id*. n. 7 (explaining additional grounds for court's belief that Congress was targeting both equipment that automatically dialed stored lists of numbers and "random or sequential blocks of numbers"). The Second and Sixth Circuits adopted the Ninth Circuit's interpretation. *See Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 290 (2nd Cir. 2020); *Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 579-80 (6th Cir. 2020). But they, too, recognized that a "random or sequential number generator" in the context of the TCPA generates random or sequential phone numbers. *See Duran*, 955 F.3d, at 284 ("in order for a program to qualify as an [autodialer], the *phone numbers it calls* must be stored using a random- or sequential-number-generator or produced using a random-or-sequential-number-generator") (emphasis added); *Allan*, 986 F.3d at 569 ("it is clear from the text of the autodialer definition under § 227(a) that a device that generates and dials random or sequential numbers qualifies as an [autodialer]"). In contrast, the Seventh, Eleventh and Third Circuits answered the open question with the narrow interpretation. They held that to qualify as an autodialer the system must in all instances (whether storing phone numbers for later dialing, or producing phone numbers for immediate dialing) use a random or sequential number generator to generate phone numbers. *See Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458, 464 (7th Cir. 2020) ("[T]he phrase 'using a random or sequential number generator' modifies both 'store' and 'produce,' *defining the means by which either task must be completed for equipment to qualify* as an [autodialer]") (emphasis added);

---

sequential numbers to meet the TCPA's definition of an autodialer" but it also could be read as suggesting "that equipment can meet the statutory definition even if it lacks that capacity." *Id*. Because it was unclear which interpretation the FCC was adopting, this aspect of the Order failed to satisfy the requirement of reasoned decision making and was set aside. *Id*. at 703.

1    *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1307 (11th Cir. 2020) ("Under this

2    reading, § 227(a) occupied the waterfront, covering devices that randomly or sequentially

3    generated telephone numbers and dialed those numbers, or stored them for later dialing.");

4    *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d Cir. 2018) ("Notably absent, however, is any

5    explanation of how the Email SMS System actually did or could generate random telephone

6    numbers to dial.").

7                      **4.      The U.S. Supreme Court Settles the Decades-Long Dispute: A System
                                 Qualifies as an Autodialer Only if it Can Generate and Dial Random
8                                or Sequential Phone Numbers**

9           In 2015, Noah Duguid filed a putative class action against Facebook, alleging that

10   Facebook had sent him unsolicited text messages using an autodialer in violation of the TCPA.

11   *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2017 U.S. Dist. LEXIS 22562, at *4 (N.D. Cal.

12   Feb. 16, 2017). Facebook moved to dismiss on several grounds, including that the complaint, and

13   then amended complaint, failed to plausibly allege that the text messages at issue were sent using

14   an autodialer "because he did not claim Facebook sent text messages to numbers that were

15   randomly or sequentially generated." *Duguid*, 2021 U.S. LEXIS 1742, at *9. The District Court

16   granted Facebook's motion and dismissed the amended complaint with prejudice. *Id.* Judge Tigar

17   agreed with Facebook that Duguid "fail[ed] to plausibly allege that Facebook used an

18   [autodialer]." *Duguid*, 2017 U.S. Dist. LEXIS 22562, at *12. The court explained that Duguid's

19   allegations suggested a "direct targeting" of specific telephone numbers that would be

20   "inconsistent with the sort of random or sequential number generation required for an

21   [autodialer]." *Id.* at *10.

22          The Ninth Circuit reversed. Relying on its prior decision in *Marks*, the court concluded

23   that "the adverbial phrase 'using a random or sequential number generator'" in the TCPA's

24   autodialer definition "modifies only the verb 'to produce,' and not the preceding verb, 'to store.'"

25   *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (quoting *Marks*, 904 F.3d at

26   1052). Thus, Duguid's allegations were sufficient to plausibly allege use of an autodialer even

27   though they did not suggest use of a random or sequential number generator to create and send

28

1  texts to such numbers. Allegations suggesting "the capacity to 'store numbers to be called' and

2  'to dial such numbers automatically'" sufficed. *Id.*

3       In a unanimous decision the Supreme Court reversed. It explained that it "granted

4  certiorari to resolve a conflict among the Courts of Appeals regarding whether an autodialer must

5  have the capacity to generate random or sequential phone numbers." 2021 U.S. LEXIS 1742, at

6  *9-10. Under the Ninth, Second and Sixth Circuits' interpretation, no random or sequential

7  number generator was required at all. Thus, in these Circuits an autodialer did not require the

8  capacity to generate random or sequential phone numbers. In contrast, under the interpretation

9  adopted by the Seventh, Eleventh, and Third Circuits, use of a random or sequential number

10  generator was required. Thus, in these Circuits, to qualify as an autodialer the system was

11  required to have the capacity to generate random or sequential phone numbers for dialing. The

12  Supreme Court sided with the Seventh, Eleventh, and Third Circuits and held that a random or

13  sequential number generator must be used in all instances. *Id.* at *19. [4] Shortly after issuing its

14  Opinion, the Court vacated and remanded the Second and Sixth Circuit's decisions that followed

15  the Ninth Circuit's broad interpretation, while simultaneously allowing the Seventh and Eleventh

16  Circuit's decisions to stand. SCOTUS Order List, 4/19/21. Therefore, an autodialer must have the

17  capacity to generate random or sequential phone numbers. *See generally Duguid,* 2021 U.S.

18  LEXIS 1742; *see also id*. at *19 (Alito, J. concurring) (stating explicit agreement with the

19  Seventh and Eleventh Circuits' analysis).

20       The bulk of the Opinion focuses on whether the phrase "using a random or sequential

21  number generator" modifies both "to store" and "to produce" or just modifies "to produce"

22  because that was the distinction between the split Courts of Appeal. But it is clear from a full

23  reading of the Opinion that a capacity to generate random or sequential telephone numbers is an

24  essential functionality of a "random or sequential number generator" for purposes of the TCPA.

25  At the outset, the Court pronounces that "[t]his case concerns 'automatic telephone dialing

26  systems' (hereinafter autodialers), which revolutionized telemarketing by allowing companies to

27

28     [4] The U.S. government also sided with Facebook and the Seventh, Eleventh and Third Circuits. Brief of Respondent United States, *Facebook, Inc. v. Duguid*, No. 19-511 (Sept. 4, 2020).

1   dial *random or sequential blocks of telephone numbers* automatically." *Id.* at *6-7. (emphasis

2   added). It also references random or sequential telephone numbers when describing the harm

3   Congress sought to address: "Indeed, due to the sequential manner in which they could generate

4   numbers, autodialers could simultaneously tie up all the lines of any business with sequentially

5   numbered phone lines." *Id*. at *7; *see id*. at *14 ("These prohibitions target a unique type of

6   telemarketing equipment that risks dialing emergency lines randomly or tying up all the

7   sequentially numbered lines at a single entity."). Ultimately the Court held—consistent with the

8   Seventh, Eleventh and Third Circuits—that to qualify as an autodialer, "a device must have the

9   capacity either to store a telephone number using a random or sequential generator or to produce

10  a telephone number using a random or sequential generator." *Id.* at *6. Nowhere does the Court

11  state that the functionality of a random or sequential number generator was anything other than

12  what everyone agreed it was since the TCPA's passage: the ability to generate random or

13  sequential phone numbers.

14          None of the parties in *Duguid* advanced Plaintiff's novel theory that the TCPA covers

15  computer software that uses random or sequential number generation functionality to select

16  specific phone numbers from a database, create SMS packets, potentially store them in a queue,

17  and generate random or sequential identification numbers that it assigns to each SMS packet. *See*

18  FAC ¶¶ 22-28. Nor did any party in *Gadelhak*, *Glasser*, *Dominguez*, *Duran*, or *Allan*. And

19  Congress surely did not intend to regulate such software when SMS technology did not even exist

20  at the time.[5] As the Supreme Court made clear, the fact that the autodialer technology targeted by

21  Congress is no longer in use is an issue for Congress, not the courts. *Duguid*, 2021 LEXIS 1742,

22  at *18-19 (rejecting argument that autodialer definition should be agile and adapt to technological

23  change).

24          Plaintiff apparently came up with the theory that using a random or sequential number

25  generator in connection with retrieval and temporary storage of specific telephone numbers pulled

26  from a database is sufficient to qualify as an autodialer based on a lone statement by the Supreme

27  _____

28      [5]*See* Ariel Bogle, *It's been 25 years since the first-ever text message and the kids are alright*, ABC SCIENCE, (Dec. 2, 2017), https://www.abc.net.au/news/science/2017-12-03/after-25-years-of-sms-were-still-anxious-about-text-speak/9205734.

Court in a footnote. The footnote comment relates to a section of the Opinion addressing whether it makes sense "to store" telephone numbers using a "random or sequential number generator." In that context, the Court pointed out that at the time Congress enacted the TCPA there was dialing equipment "that used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing)." *Duguid*, 2021 U.S. LEXIS 1742, at *16. The Court then provided an example of what one then-existing dialer could do: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id*. at *16 n. 7 (citing Brief for Professional Association for Customer Engagement et al. as *Amici Curiae* ("PACE Brief"), *Facebook, Inc. v. Duguid*, No. 19-511 (Sept. 10, 2020)). The Court's point was that a random or sequential number generator could be used to both "store" and "produce" phone numbers. *See id*. But as the cited brief explains, the preproduced list of phone numbers were themselves random or sequential blocks of phone numbers generated by the same random or sequential number generator, not specific and targeted telephone numbers like those used by DoNotPay. *See* PACE Brief at 18 ("The '028 Patent shows . . . an array . . . of telephone numbers that are sequentially generated and stored."); *id*. at 16-21 (addressing problems associated with dialing blocks of random or sequential telephone numbers that were reduced by patented dialer). While Plaintiff's last-ditch effort to save his claim is clever, it is unsupported by, and indeed contrary to, *Duguid*.

> **B.      The FAC Fails to Plausibly Allege That DoNotPay's System Has the Capacity to Generate Random or Sequential Phone Numbers and Send Them Texts**

Plaintiff has no viable claim. According to Plaintiff, DoNotPay's system is able to use a random or sequential number generator to create SMS packets (which are not telephone numbers, but instructions that facilitate the transmission of a text message), possibly store those packets temporarily in queue, and assign those SMS packets identification codes. FAC ¶¶ 25, 28. Nowhere does the FAC allege or contain factual allegations making plausible that DoNotPay's system has the capacity to generate random or sequential *telephone numbers*. Nor could it. The messages themselves as reproduced in the FAC show that the system sent text messages only to

specific phone numbers supplied by consumers after downloading the app and beginning to register for DoNotPay's service. *See id.* ¶ 20. Plaintiff's claim fails as a matter of law because it lacks any allegation that DoNotPay's system has the capacity to generate random or sequential phone numbers—an allegation Plaintiff cannot make in good faith. *See* infra at 5 (citing cases dismissing TCPA claims where they failed to plausibly allege use of an autodialer).

**IV.     CONCLUSION**

For the reasons stated above, DoNotPay respectfully requests that the Court grant its motion and dismiss the Amended Complaint with prejudice for failure to state a claim.

Dated:  May 5, 2021                              Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  */s/ Tonia Ouellette Klausner*
          Tonia Ouellette Klausner

Attorneys for Defendant
DONOTPAY, INC.