**DAPEER ROSENBLIT LITVAK, LLP**
William Litvak
(Cal. Bar No. 90533)
11500 W. Olympic Blvd., Suite 550
Los Angeles, CA 90064
E: wlitvak@drllaw.com
T: 310-477-5575

**IJH Law**
Ignacio Hiraldo, Esq.
(*pro hac vice*)
1200 Brickell Ave. Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: 786-496-4469

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATHEW HUFNUS, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>DONOTPAY, INC., a Delaware Corporation,<br><br>       Defendant. | Case No. 3:20-cv-8701-VC<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Date: June 10, 2021**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 4, 17th Floor**<br>**Judge: Hon. Vince Chhabria**<br><br>**Complaint filed: December 9, 2020** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT .................................................................................................................... 2

   a.   Defendant Rewrites the Statute and Misinterprets the Holding of *Duguid*............................ 2

   b.   Plaintiff Sufficiently Alleges Defendant's Use of Equipment That has the Capacity to Function as an ATDS. ............................................................................................................. 7

III.   CONCLUSION ............................................................................................................... 11

i

# **TABLE OF AUTHORITIES**

## **CASES**

*Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211 (D. Mass. Mar. 8, 2021) .................................................................................................................. 7

*Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 U.S. Dist. LEXIS 183095 (M.D. Tenn. Nov. 19, 2014) ................................................................................................................. 11

*Derrick Virgne v. C.R. Eng.*, No. 1:19-cv-02011-SEB-MJD, 2020 U.S. Dist. LEXIS 14977 (S.D. Ind. Jan. 28, 2020) ................................................................................................................... 5

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) ................................................................ 3

*Facebook, Inc. v. Duguid,* 209 L.Ed.2d 272 (U.S. 2021) ............................................................... 1

*Fishman v. Subway Franchise Advertising Fund Trust, Ltd.,* 2019 U.S. Dist. LEXIS 200710, 2019 WL 6135030 (C.D. Cal. 2019) .......................................................................................... 10

*Flores v. Adir Int'l, LLC*, No. CV 15-00076-AB (PLAx), 2015 U.S. Dist. LEXIS 92176 (C.D. Cal. July 15, 2015) ................................................................................................................. 9

*Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458 (7th Cir. 2020) ....................................................... 3

*Geraci v. Red Robin Int'l, Inc.*, Civil Action No. 1:19-cv-01826-RM-KLM, 2020 U.S. Dist. LEXIS 53143, at *4 (D. Colo. Mar. 25, 2020) .................................................................... 7

*Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1230 (S.D. Fla. 2019) ........................................ 9

*Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020) ........................ 3, 5

*Hill v. USAA Sav. Bank,* No. CIV-18-803-SLP, 2019 U.S. Dist. LEXIS 117493 (W.D. Okla. July 15, 2019) ................................................................................................................................. 6

*Holt v. Facebook, Inc.,* 240 F. Supp. 3d 1021 (N.D. Cal. 2017) ................................................... 5

*In re Jiffy LubeLabe Int'l, Inc.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) ...................................... 9

*Iniguez v. CBE Grp.*, 969 F. Supp. 2d 1241 (E.D. Cal. 2013) ....................................................... 2

*Izsak v. DraftKings, Inc.*, 191 F. Supp. 3d 900 (N.D. Ill. 2016) ................................................... 7

*King v. Time Warner Cable, Inc.*, 894 F.3d 473 (2d Cir. 2018) .................................................... 6

*Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 143953 (N.D.

Cal. Aug. 11, 2020) ........................................................................................................ 5

*Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) ................................ 10

*Metten v. Town Sports Int'l, LLC*, 2019 WL 1299939, at *3 (S.D.N.Y. Mar. 21, 2019) ................ 7

*Meyer v. Bebe Stores, Inc.*, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148 (N.D. Cal. 2015).... 9

*Montanez v. Future Vision Brain Bank, LLC*, Civil Action No. 20-cv-02959-CMA-MEH, 2021

   U.S. Dist. LEXIS 67091 (D. Colo. Apr. 7, 2021) ...................................................... 2

*Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1 (1st Cir. 2011) ................................ 7

*Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp.3d 927 (N.D. Ill. 2018) ......................... 6

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ................... 1, 5

*Schley v. One Planet Ops Inc*., 445 F. Supp. 3d 454 (N.D. Cal. 2020) ....................... 11

*Serban v. Cargurus, Inc.*, 2016 WL 4709077 (N.D. Ill. Sept. 8, 2016) ......................... 7

*Torres v. Inteliquent, Inc.*, 2018 WL 5809246 (E.D. La. Nov. 6, 2018) ........................ 8

*Tuck v. Guardian Prot. Servs.*, No. 15-CV-1376 JLS (JLB), 2016 U.S. Dist. LEXIS 121699 (S.D.

   Cal. Sep. 8, 2016) ...................................................................................................... 2

*Washington v. Ross Med. Educ. Ctr.*, 2018 WL 2336073, at *2 (N.D. Ind. May 22, 2018) ........ 7, 9

**STATUTES**

47 U.S.C. § 227 .............................................................................................................. 4

iii

## I.   **INTRODUCTION**

Defendant's Motion to Dismiss (the "Motion) can be summarized in one sentence: Plaintiff's complaint should be dismissed, with prejudice, because Defendant did not call random numbers. *See* Mot. at pg. 5.[1] However, adopting Defendant's theory requires the Court to ignore (1) the plain language of the TCPA's statutory definition for Automatic Telephone Dialing System ("ATDS") definition, (2) the Supreme Court's recent interpretation of that language, and (3) Plaintiff's well plead allegations.

At its core Defendant's theory is built upon a misreading of the Supreme Court's holding in *Facebook, Inc. v. Duguid,* 209 L.Ed.2d 272 (U.S. 2021). In *Duguid*, the Supreme Court held:

> *Held*: To qualify as an "automatic telephone dialing system" under the TCPA, a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator.

*Duguid,* 209 L.Ed.2d at 275 (emphasis in original). Defendant's argument would rewrite the Supreme Court's holding as follows:

> *Held*: To qualify as an "automatic telephone dialing system" under the TCPA, a device must have ~~the capacity either to store a telephone number using a random or sequential number generator, or to~~ produce**d** ~~a~~ **the** telephone number **that was dialed** using a random or sequential **telephone** number generator.

As explained below in more detail, Defendant's rewriting of Duguid is incorrect. Indeed, before the Ninth Circuit's adoption of a more expansive ATDS standard in *Marks*, and in a holding which remains binding and unaffected by *Duguid,* the Ninth Circuit rejected just such a limited reading of the statute: "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, **it need only have the capacity to do it**." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis supplied); *see also Tuck*

---

[1] Stating, "Plaintiff does not and cannot plausibly allege DoNotPay's texting software generates random or sequential telephone numbers because DoNotPay's text message reflects that DoNotPay sent him a text only because Plaintiff voluntarily provided his telephone number to DoNotPay when he started to register for DoNotPay's service."

1

*v. Guardian Prot. Servs.*, No. 15-CV-1376 JLS (JLB), 2016 U.S. Dist. LEXIS 121699 (S.D. Cal. Sep. 8, 2016) ("whether or not Defendant's system randomly generated Plaintiff's number is not determinative because the TCPA only requires that the system have that capability, not that it was actually utilized with respect to a particular phone call") (quoting *Iniguez v. CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) (citing *Satterfield*, 569 F.3d at 951))).

Here, even without the benefit of any discovery, Plaintiff sufficiently alleges that the equipment utilized by Defendant to transmit the marketing text messages has the capabilities that qualify it as an ATDS. *See*, *e.g.*, First Amended Complaint ("FAC") at ¶¶16-20; 22-28. Nothing more is required of Plaintiff at this stage of the litigation. Ultimately, as stated by the only court Plaintiff is aware of to have dealt with this issue post-*Duguid*,

> [w]hile the Supreme Court's decision elucidates the definition of an ATDS, that holding will prove far more relevant on a future motion for summary judgment than it does now. At this stage, the Court must take all well-pleaded facts as true and cannot consider outside evidence without converting the Motion into a motion for summary judgment.

*Montanez v. Future Vision Brain Bank, LLC*, Civil Action No. 20-cv-02959-CMA-MEH, 2021 U.S. Dist. LEXIS 67091, at *17 (D. Colo. Apr. 7, 2021).

Ultimately, neither the statute nor *Duguid* say what Defendant wants it to say and "[Defendant's] quarrel is with Congress, which did not define an autodialer as [narrowly] as [it] would have liked." *Duguid,* 209 L.Ed.2d at 283. Respectfully, the Court should deny Defendant's Motion and allow discovery to proceed.

## II.   ARGUMENT

### a.  Defendant Rewrites the Statute and Misinterprets the Holding of *Duguid*.

Defendant rewrites the statutory definition of ATDS and relies on a misreading of *Duguid*. First, contrary to Defendant's arguments, *see* Mot. at pg. 2, *Duguid* actually rejected the narrow ATDS definition put forth by the Third, Seventh, and Eleventh Circuits. [2] Those Circuits' interpretations are contrary to *Duguid* because they (1) delete the word "store" by requiring as a

---

[2] *Duguid* also rejected "human intervention" as a factor to consider when determining if an ATDS was utilized. *Duguid*, 209 L.Ed.2d at 281 n.6.

condition precedent that the stored numbers are first produced by a random or sequential telephone number generator, and (2) delete the word "capacity" by requiring that the production of numbers must have occurred in every instance for liability to arise.[3] Indeed, only Justice Alito, in concurring in the judgment, stated he supported these Circuit's analysis. *See Duguid,* 209 L.Ed.2d at 284 (Alito, J., concurring in the judgment).

The remainder of the Supreme Court rejected such a narrow reading and, consistent with the actual words of the statute, gave actual meaning to the words "store" and "capacity". The Supreme Court repeatedly stated in its holdings that an ATDS includes equipment with the (1) capacity (2) to store telephone numbers (3) using a random or sequential number generator. *See Duguid,* 209 L.Ed.2d at 275 ("a device must have the **capacity either** to store a telephone number using a random or sequential number generator, **or** to produce […]") (emphasis supplied); *id*. at 283 ("We hold that a necessary feature [] is the capacity to use a random or sequential number generator **to either store or produce** […].") (emphasis supplied). In other words—contrary to the Defendant's proposed reading and contrary to the holdings of *Glasser*, *Gadelhak*, and *Dominguez*— the Supreme Court held that an ATDS need not have produced the telephone numbers that were dialed. Instead, an ATDS includes equipment that has the "capacity [] to store a telephone number using a random or sequential number generator". *Id*. at 275. Despite this, Defendant asks the Court to ignore *Duguid's* actual holding, and instead apply dicta where the Supreme Court summarized its grant of certiorari. *See* Mot. at pg. 2 (citing *Duguid* 209 L.Ed.2d. at 278-79).

Second, contrary to the Third, Seventh, and Eleventh Circuits and Defendant's proposed reading, *Duguid* gives actual meaning to "store". In *Duguid*, the Supreme Court made clear that courts should give significant weight to the actual text of a statute. *See, e.g., Duguid,* 209 L.Ed.2d

---

[3] *See Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018). Although some language in these decisions pay lip service to the words "store" and "capacity", their actual holdings excise both of these words. For example, in both the *Glasser* and *Gadelhak* decisions, "store" is applicable if, and only if, the telephone numbers were first produced by a random or sequential number generator. *See Glasser*, 948 F.3d at 1307-08 (discussing "store"); *Gadelhak*, 950 F.3d at 464-65 (same); *id* at 469 ("under our reading, too, the capacity to generate random or sequential numbers is necessary to the statutory definition."). In reality, both decisions relied on the plaintiff's numbers not having been produced with a random or sequential number generator. *See, e.g., Glasser*, 948 F.3d  at 1314-15 (Martin, J. dissenting).

at 279 ("We begin with the text."); *see also id.* at 279-80; *id.* at 283 ("This Court must interpret what Congress wrote[.]"). What Congress actually wrote is that an ATDS includes equipment that has the "capacity—to store or produce telephone numbers to be called, using a random or sequential number generator". 47 U.S.C. § 227(a)(1). The Supreme Court recognized the word "store", and explained that the term ATDS includes equipment that utilizes a random or sequential number generator to determine the order in which to "pick phone numbers" from a list of numbers to dial. *See Duguid*, 209 L.Ed.2d 272, 282 n.7 ("For instance, **an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list**. It would then store those numbers to be dialed at a later time.") (citing Brief for Professional Association for Customer Engagement et al. as *Amici Curiae* 15-21 (discussing "a method of blending random and sequential number generator technologies to dial telephone numbers within a defined number range. The numbers would be initially dialed in a random manner, but then at a certain point any remaining undialed numbers are dialed in a sequential manner.")).

Defendant dismisses this language as Plaintiff's "clever" last ditch effort. Mot. at pg. 14. But, Plaintiff did not write *Duguid* or the statute, and the language of the statute makes clear that what is required is not a random or sequential "telephone number" generator: it is a "random or sequential **number** generator".  47 U.S.C. § 227(a)(1)(A) (emphasis added). The Supreme Court recognized this, and its footnote 7 example makes clear that the numbers that were called do not have to be produced first. If they did, whether the equipment used a "random number generator to determine the order" would be immaterial: those numbers would have to first have been produced and anything that happened after would be irrelevant. And, contrary to the Supreme Court's mandate to give weight to the actual words, this reading totally deletes the word "store".

Third, and contrary to Defendant's arguments, *Duguid* also gives the word "capacity" independent meaning. *Duguid* makes clear that the proper question is not whether the ATDS function was ever used. Instead, the question is whether the system has such a "capacity" even if this capacity was not deployed.  *See, e.g., Duguid*, 209 L.Ed.2d at 275. Such a reading of *Duguid* is consistent with the Ninth Circuit's holding in *Satterfield*:

When evaluating the issue of whether equipment is an **ATDS**, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." **<u>Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.</u>**

*Satterfield,* 569 F.3d at 951 (emphasis added). As recently stated by Judge Ryu in denying a motion to stay pending the *Duguid* opinion, *Satterfield* is not disturbed by *Duguid:*

The Ninth Circuit has definitively held that a system "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield*, 569 F.3d at 951; *see also King v. Time Warner Cable Inc*., 894 F.3d 473, 480 (2d Cir. 2018) ("[T]he TCPA applies to calls from a device that can perform the functions of an autodialer, regardless of whether it has actually done so in a particular case."). This is a separate question than the one before the Supreme Court in *Duguid*. Even if the Ninth Circuit is incorrect that a device that can store and automatically dial numbers is an ATDS, such a conclusion would not necessarily invalidate its interpretation of the term "capacity." In other words, under Ninth Circuit precedent that is not before the Supreme Court in *Duguid*, Baker's technology could still be considered an ATDS under Ninth Circuit law if it has the capacity to store or produce numbers "using a random or sequential number generator," regardless of whether it was being used for that purpose when it sent texts to the dispensaries' customers. Notably, the Eleventh Circuit, which split from the Ninth Circuit on the random generation issue, still recognized that the TCPA "applies to devices that have the 'capacity' to identify randomly generated numbers; it does not require that capacity to be used in every covered call." *Glasser*, 948 F.3d at 1312.

*Komaiko v. Baker Techs., Inc*., No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 143953, at *7-8 (N.D. Cal. Aug. 11, 2020); *see also Derrick Virgne v. C.R. Eng.*, No. 1:19-cv-02011-SEB-MJD, 2020 U.S. Dist. LEXIS 14977, at *10-11 (S.D. Ind. Jan. 28, 2020) ("Even if it turns out that CRE did not use the functions of an ATDS when dialing Mr. Virgne's number, this does not foreclose the possibility that an ATDS (with the required **<u>capacity</u>**) may have been used all the same.") (emphasis in original).

 Consistent with the statute, courts throughout the country have recognized the word "capacity" means that whether the equipment used this capacity is not determinative of a plaintiff's claim. *See, e.g., Holt v. Facebook, Inc.,* 240 F. Supp. 3d 1021, 1026 (N.D. Cal. 2017) (denying motion to dismiss and quoting *Satterfield*)*; Hill v. USAA Sav. Bank,* No. CIV-18-803-SLP, 2019 U.S. Dist. LEXIS 117493, at *12-13 (W.D. Okla. July 15, 2019) ("courts interpreting the TCPA

1   have found that 'to qualify as an ATDS, the defendant need not have deployed the device's capacity

2   to generate telephone numbers randomly or sequentially as long as the device has the present ability

3   to do so.'") (quoting *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 644 (N.D. Ill. 2019)

4   (citing *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp.3d 927, 939 (N.D. Ill. 2018) ("[T]he best

5   reading of 47 U.S.C. § 227(a)(1) requires that an ATDS have the capacity to generate numbers

6   randomly or sequentially and then to dial them, even if that capacity is not deployed for practical

7   reasons."))); *King v. Time Warner Cable, Inc.*, 894 F.3d 473, 479 (2d Cir. 2018) (drawing

8   distinction between "a device that currently has features that enables it to perform the functions of

9   an autodialer — whether or not those features are actually in use during the offending call ).

10  Defendant's proposed reading—although recognizing that "capacity" is part of the statute—deletes

11  the word entirely. *See* Mot. at pg. 14 ("Nor could it. The messages themselves as reproduced in the

12  FAC show that the system sent text messages only to specific phone numbers supplied by

13  consumers …").

14      Finally, *Duguid* came up to the Supreme Court after a motion to dismiss where the

15  plaintiff's ATDS allegations in the underlying case were that "Facebook violated the TCPA by

16  maintaining a database that stored phone numbers and programming its equipment to send

17  automated text messages." *Id.* at 275. The Supreme Court's reversal—based on allegations of

18  dialing from a list—do not support a reading that *Duguid* requires that the numbers that were called

19  were first produced randomly or sequentially. Whether Facebook's equipment had this "capacity"

20  was never explored in *Duguid* because of the plaintiff's limited allegations and the Ninth Circuit's

21  holding that these allegations were sufficient. As described below, Plaintiff's allegations here are

22  materially different than the *Duguid* allegations and sufficiently state a cause of action.

23      Plaintiff has met his burden at the pleadings stage and, ultimately, the ATDS question will

24  require discovery, including, but not limited to, the specific capabilities of the equipment utilized

25  by Defendant, as well as an inspection of the platform and expert discovery – how Defendant may

26  or may not have used the equipment is not relevant to the ATDS inquiry.  Plaintiff respectfully

27  submits that this Court should ultimately rule on the issue on a complete record and not based on

28  any unsubstantiated representations made by Defendant.

1

2

   **b.   Plaintiff Sufficiently Alleges Defendant's Use of Equipment That has the**
   **Capacity to Function as an ATDS.**

3

4

5

   Plaintiff's First Amended Complaint and the reasonable inferences that can be drawn from the allegations contained therein demonstrate, for purposes of ruling on a motion to dismiss, that Defendant utilized equipment that may function as an ATDS.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

   "In order to plausibly allege that a defendant used an ATDS, a plaintiff need not 'elaborate on the specific technical details of a defendant's alleged ATDS, such as what type of machines were used to make a call or how those machines functioned.'" *Serban v. Cargurus, Inc.*, 2016 WL 4709077, at *4 (N.D. Ill. Sept. 8, 2016); *see also Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211, at *8 (D. Mass. Mar. 8, 2021) ("When determining whether a plaintiff has adequately pled the use of an ATDS, courts must balance how difficult it may be for unsophisticated consumers to allege facts about the technical specifications of a calling company's dialing system without the benefit of discovery with R. 12(b)(6)'s requirement that a plaintiff provide enough non-conclusory facts 'to raise a right to relief above the speculative level.'") (quoting *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1 (1st Cir. 2011)); *Geraci v. Red Robin Int'l, Inc.*, Civil Action No. 1:19-cv-01826-RM-KLM, 2020 U.S. Dist. LEXIS 53143, at *4 (D. Colo. Mar. 25, 2020) ("Moreover, as other courts have noted, plaintiffs in TCPA cases are without a realistic means of alleging precisely the type of machine a defendant has used to make unauthorized calls or send unauthorized text messages.") (citations omitted)*; Metten v. Town Sports Int'l, LLC*, 2019 WL 1299939, at *3 (S.D.N.Y. Mar. 21, 2019) ("While Plaintiff does not specifically allege that Defendants' text messages were send using an ATDS, requiring Plaintiff to know the specific technology utilized at this stage is impractical."); *Washington v. Ross Med. Educ. Ctr.*, 2018 WL 2336073, at *2 (N.D. Ind. May 22, 2018); *Izsak v. DraftKings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016).

25

26

27

28

   "Because it would be nearly impossible for plaintiffs to obtain evidence to determine these specific details absent discovery, requiring them to allege such details at the pleading stage would make defendants . . . 'virtually immune to TCPA claims, which clearly is not what was intended by Congress in creating the TCPA.'" *Serban*, 2016 WL 4709077, at *4; *see also Hill,* 2019 U.S. Dist.

LEXIS 117493, at *12 ("The Court recognizes, as many courts have, 'the difficulty of alleging details about an ATDS before discovery.'"); *Torres v. Inteliquent, Inc.*, 2018 WL 5809246, at *4 (E.D. La. Nov. 6, 2018) ("It would be unreasonable, at this juncture, to hold Plaintiff to a higher standard.").

Here, Plaintiff alleges the transmission of generic text messages, sent utilizing a long-code (which is the same long-code telephone number that others had received identical messages from), and includes screenshots of other telephone numbers who have received the same exact message from Defendant. FAC at ¶¶16-20.  Plaintiff alleges, among others, that the equipment utilized by Defendant:

- "has the capacity to (1) store telephone numbers; (2) using a random or sequential number generator." *id.* at ¶ 22;

- "has the capacity to indefinitely store telephone numbers within a computer database for subsequent dialing." *id.* at ¶ 23;

- "has the capacity to utilize a random and sequential number generator in the storage of those numbers, and does in fact utilize said number generator for a variety of functions including, but not limited to, the selection and creation of SMS packets containing the target telephone numbers to be dialed by the Platform, as well as the sequential and/or random selection of telephone numbers to be dialed from a preselected list of numbers." *id.* at ¶ 22;

- "A packet in the context of SMS transmission is an envelope of data that contains various instructions and content, including the target cellular telephone number to be dialed, the sequence in which to dial each number, and wording of the message." *id.* at ¶ 22;

- "In the context of SMS packet creation, the Platform utilizes a random and/or sequential number generator to pull and generate telephone numbers from a list of numbers and transfer those numbers to a separate list for the creation of the packets, and ultimately placement into each independent SMS packet." *id.* at ¶ 22;

- "In the context of dialing the numbers, the Platform utilizes a random and/or sequential number generator to pick and designate the sequence in which to dial the telephone numbers. The Platform independently selects the rate and time at which to dial each telephone numbers and may temporarily store the packets in a queue when the volume exceeds capacity to deliver them." *id.* at ¶ 22; and

- "The Platform also has the capacity to use its random and/or sequential number generator to generate random or sequential identification numbers that

it assigns to each SMS packet." *id.* at ¶ 22.

These allegations bring the equipment utilized by Defendant squarely within the ATDS definition as interpreted by the Supreme Court. *See, e.g., Duguid,* 209 L.Ed.2d at 275 ("a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce […]") (emphasis supplied); *Montanez*, 2021 U.S. Dist. LEXIS 67091, at *19 (denying motion to dismiss based on allegations similar to those found here); *In re Jiffy LubeLabe Int'l, Inc.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) ("Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage.").

Plaintiff's allegations go far beyond merely parroting the statutory language of an ATDS. *See Washington*, 2018 WL 2336073, at *4 (that messages were impersonal and template-based supported inference that system was an ATDS); *Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1230 (S.D. Fla. 2019) (denying motion to dismiss where "[t]he Amended Complaint provides a screenshot of the Text Message and alleges that the impersonal and generic nature of the Text Message demonstrates that Defendants used an ATDS."); *Meyer v. Bebe Stores, Inc.*, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, *4 (N.D. Cal. 2015) (finding that TCPA claim was sufficiently stated where complaint alleged that the recipient was asked to type a one-word response to interact with the text message.).

Moreover, "[a] generic or impersonal message" – like the one alleged here – "suggests the use of an ATDS. So too does a promotional message." *See, e.g.*, *Flores v. Adir Int'l, LLC*, No. CV 15-00076-AB (PLAx), 2015 U.S. Dist. LEXIS 92176, at *13 (C.D. Cal. July 15, 2015) ("[T]he defendants in those cases 'had no other reason to be in contact with [the] Defendants,' and the promotional nature of the text messages suggested at least some level of random targeting."), *rev'd on other grounds by Flores v. Adir Int'l, LLC*, 685 F. App'x 533 (9th Cir. 2017). And as courts in the Ninth Circuit have observed, when text messages are "[c]rafted in this generic manner," they "are optimized for mass delivery to thousands of individuals." *Id.; see also  Kramer v. Autobytel,*

1  *Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an

2  ATDS where messages were advertisements written in an impersonal manner); *Fishman v. Subway*

3  *Franchise Advertising Fund Trust, Ltd.,* 2019 U.S. Dist. LEXIS 200710, 2019 WL 6135030, *8

4  (C.D. Cal. 2019) (finding ATDS allegations sufficient where plaintiff alleged "that T-Mobile used

5  short message script messaging technology to transmit thousands of unsolicited messages").

6      Lastly, the frequency and identical content of the messages sent to Plaintiff and others also

7  corresponds with the use of an ATDS. Plaintiff received six text messages from Defendant at 10:24

8  PM on September 26, 2020. FAC at ¶11. These text messages which are one long marketing message

9  cut into separate messages and delivered to Plaintiff out of order, and are identical to the text

10  messages received by others in the weeks prior:



28  FAC at ¶ 20. The number of messages sent, the fact that they were received within a short span of

1    time, and the fact they consisted of the same content are all indicators that an ATDS was used. *See*

2    *Schley v. One Planet Ops Inc.*, 445 F. Supp. 3d 454, 460 (N.D. Cal. 2020) ("Repetitive messages

3    sent over a short period of time suggest the use of an ATDS," as do messages consisting of the same

4    content*")* (citing *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 U.S. Dist. LEXIS 183095

5    at *15 (M.D. Tenn. Nov. 19, 2014) (finding plaintiff sufficiently alleged use of ATDS based on

6    allegations that "[text] messages were repeated within a short span of time and consisted of the same

7    content")).

8         As explained above, Defendant's Motion relies on its misinterpretation of *Duguid* to require

9    that the numbers that were called were generated randomly or sequentially. *See* Mot. at pgs. 11-15.

10   Relying on this misreading, Defendant contends it cannot be liable because it collected Plaintiff's

11   telephone numbers and the telephone numbers of others through its website or application. *See id.*

12   at 15. Unfortunately for Defendant, the Supreme Court did not hold that the telephone number called

13   needed be generated by a random or sequential telephone number generator. Instead, as discussed

14   *supra*, the Supreme Court explained that the term ATDS includes, among other, equipment that

15   utilizes a random or sequential number generator to determine the order in which to "pick phone

16   numbers" from a list of numbers to dial. *See Duguid*, 209 L.Ed.2d at 282 n.7 ("For instance, **an**

17   **autodialer might use a random number generator to determine the order in which to pick**

18   **phone numbers from a preproduced list**. It would then store those numbers to be dialed at a later

19   time.").

20       **III.   CONCLUSION**

21       Plaintiff's First Amended Complaint plausibly alleges that Defendant sent promotional text

22   messages utilizing equipment that has the capability of functioning as an ATDS.  Plaintiff has met

23   his burden as this stage of the proceedings and nothing more is required.  Discovery should be

24   permitted to proceed so this case can be decided on the merits and not based on Defendant's self-

25   serving narrative.

26       **WHEREFORE**, Plaintiff Mathew Hufnus, respectfully requests an order denying

27   Defendant's Motion, and such other relief deemed appropriate and equitable under the

28   circumstances.

1

Dated:  May 19, 2021

2

Respectfully submitted,

3

4

By:      */s/ Ignacio Hiraldo*

5

**IJH Law**
Ignacio Hiraldo, Esq.

6

(*pro hac vice*)
1200 Brickell Ave.

7

Suite 1950
Miami, FL 33131

8

E: IJhiraldo@IJhlaw.com
T: 786-496-4469

9

10

**DAPEER ROSENBLIT LITVAK, LLP**
William Litvak
(Cal. Bar No. 90533)

11

11500 W. Olympic Blvd., Suite 550
Los Angeles, CA 90064

12

E: wlitvak@drllaw.com
T: 310-477-5575

13

14

*Counsel for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28