TONIA OUELLETTE KLAUSNER (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: tklausner@wsgr.com

SARA L. TOLBERT, State Bar No. 300945
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: stolbert@wsgr.com

Attorneys for Defendant
DONOTPAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATHEW HUFNUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DONOTPAY, INC., a Delaware Corporation<br><br>Defendant. | CASE NO.: 3:20-cv-08701-VC<br><br>**DEFENDANT DONOTPAY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date:** June 10, 2021<br>**Time:** 2:00 p.m.<br>**Place:** Courtroom 4, 17th Floor<br>**Judge:** Hon. Vince Chhabria<br><br>**Complaint filed: December 9, 2020** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................... 2

        A.      The Legislative Context of the TCPA's Autodialer Definition Demonstrates That a "Random or Sequential Number Generator" Generates Random or Sequential Phone Numbers. ....................................................................................... 2

        B.      The Statutory Context of the TCPA's Autodialer Definition Further Demonstrates That a "Random or Sequential Number Generator" Generates Random or Sequential Phone Numbers. ............................................................. 3

        C.      *Duguid* Addressed the Question Left Open by the D.C. Circuit and on Which Other Circuits were Split and Concluded that a Device Qualifies as an Autodialer Only if it Can Generate Random or Sequential Phone Numbers. ................................................................................................................. 4

        D.      Plaintiff's Remaining Arguments Lack Merit. ........................................................ 6

        E.      Plaintiff's Allegations Fail to State a Claim Under a Proper Post-*Duguid* Autodialer Interpretation. ........................................................................................ 8

III.    CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Pages**

## CASES

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ............................................................................................. 4

*Duguid v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 22562 (N.D. Cal. Feb. 16, 2017),
  *rev'd* 926 F.3d 1146 (9th Cir. June 13, 2019), *rev'd*, 141 S. Ct. 1163 (2021) .......... 7, 9, 10

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 1163 (2021) ........................................................................... 1, 2, 3, 4, 5, 6, 7

*Duguid v. Facebook, Inc.*,
  No. 3:15-cv-00985-JST, Dkt. 129 (N.D. Cal. Apr. 20, 2021) ............................................. 9

*Flores v. Adir Int'l, LLC*,
  No. CV 15-00076-AB, 2015 U.S. Dist. LEXIS 92176 (C.D. Cal. July 15,
  2015), *rev'd on other grounds*, 685 F. App'x 533 (9th Cir. 2017) ................................... 10

*MCI Telecomms. Corp. v. U.S. W. Commc'ns*,
  204 F.3d 1262 (9th Cir. 2000) ............................................................................................. 4

*Montanez v. Future Vision Brain Bank, LLC*,
  No. 20-cv-02959-CMA-MEH , 2021 U.S. Dist. LEXIS 67091 (D. Colo.
  Apr. 7, 2021) ..................................................................................................................... 10

*Peck v. Cingular Wireless, LLC*,
  535 F.3d 1053 (9th Cir. 2008) ............................................................................................. 4

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ........................................................................................ 7, 8

*Weisberg v. Stripe, Inc.*,
  No. 16-cv-00584-JST, 2016 U.S. Dist. LEXIS 96794 (N.D. Cal. July 25,
  2016) .................................................................................................................................. 9

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2

## I. INTRODUCTION

Context matters. The Supreme Court considered context when interpreting the TCPA's autodialer definition in *Facebook, Inc. v. Duguid* and holding that the definition "requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." 141 S. Ct. 1163, 1171 (2021). The Court considered the "statutory context" of the TCPA's prohibition on text messages sent using an autodialer without consent and concluded that all of the autodialer prohibitions "target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *See id.* The Court also considered the legislative context, which made clear that in enacting the autodialer prohibitions Congress was targeting a very specific type of equipment that "revolutionized telemarketing by allowing companies to dial random or sequential blocks of telephone numbers automatically." *Id.* at 1167. Plaintiff asks this Court to put blinders on to this context and be the first court in the Country to hold that the autodialer definition encompasses a software system alleged to use a random or sequential number generator in connection with selection and potential storage of targeted phone numbers and generation of random or sequential identification numbers, even though it does not and cannot generate random or sequential phone numbers. The Court should decline that invitation for many reasons.

Plaintiff's novel theory is based exclusively on a footnote describing a patented dialer that existed when the TCPA was enacted and that could store phone numbers using a random or sequential number generator. Plaintiff claims that this single explanatory footnote shows that while the Supreme Court expressly granted certiorari "to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," *id.* at 1168-69, it resolved this conflict by agreeing with neither side. According to Plaintiff, the Court reversed the Ninth Circuit, which held that an autodialer need not have the capacity to generate random or sequential phone numbers, and vacated and remanded cases from two Circuits that sided with the Ninth, while simultaneously rejecting the other Circuits' interpretation that required a capacity to generate random or sequential phone numbers in order to qualify as an autodialer, but allowing decisions applying such interpretation to stand. This makes

no sense. If the Supreme Court meant to adopt an entirely new interpretation as Plaintiff contends, it would have so stated in the body of its unanimous opinion, and it would not have allowed decisions it disagreed with to stand. Plaintiff's nonsensical theory is even more far-fetched given that no one – not Duguid, not any of the conflicting Courts of Appeals, and not the FCC in any of its dozens of TCPA rulings – has taken the position that a random or sequential number generator in the context of the TCPA does anything other than generate random or sequential phone numbers. The Court should decline Plaintiff's unfounded request to interpret the autodialer definition in a new way that flies in the face of its statutory and legislative context, as well as the Supreme Court's *Duguid* decision. Instead, DoNotPay respectfully submits that the Court should interpret the definition as encompassing only random or sequential number generators that can generate, and either store or produce, and dial, random or sequential phone numbers.

If the Court agrees with DoNotPay on the law, then the rest of the Rule 12(b)(6) analysis is easy and results in a with-prejudice dismissal of Plaintiff's case. The First Amended Complaint ("FAC") does not allege that DoNotPay's texting software has the capacity to generate random or sequential phone numbers. And its detailed factual allegations do not make the existence of such capacity plausible. Plaintiff cites no case with remotely similar factual allegations to those set forth in the FAC. And he ignores the slew of cases cited by DoNotPay that dismissed with prejudice TCPA complaints reflecting that, like here, the texts at issue were targeted at known phone numbers. In light of *Duguid*'s resolution of the Circuit split in favor of an autodialer definition interpretation requiring a capacity to generate random or sequential phone numbers, this Court should do the same.

II.   **ARGUMENT**

    A.    **The Legislative Context of the TCPA's Autodialer Definition Demonstrates That a "Random or Sequential Number Generator" Generates Random or Sequential Phone Numbers.**

DoNotPay devoted multiple pages of its Motion to explaining the legislative history of the TCPA's "automatic telephone dialing system" definition. *See* Mot. at 6-11. As we explained, and as acknowledged by the unanimous *Duguid* Court, the TCPA's prohibition on using an autodialer to make calls to wireless numbers addressed a very specific type of dialing equipment used in

1991 when the statute was enacted, "which revolutionized telemarketing by allowing companies to dial random or sequential blocks of telephone numbers automatically." *Duguid*, 141 S. Ct. at 1167 (citing legislative history); *see also* Mot. at 6-7 (citing additional legislative history). That legislative history makes clear that a "random or sequential number generator" generates random or sequential phone numbers. Plaintiff entirely fails to address this backdrop against which the TCPA was enacted. Instead he advances an autodialer definition that would cover software that selects targeted phone numbers, potentially stores them, and generates random or sequential *identification numbers* all as part of constructing SMS packets. *See* Mot. at 5; Opp. at 8-9; FAC ¶ 28. Such random or sequential number generation is untethered to Congress's intent because its use does not risk reaching random phone numbers, or sequential blocks of phone numbers. Allowing a TCPA claim to be stated based on these allegations "would take a chainsaw to these nuanced problems [caused by calls to random or sequential blocks of phone numbers] when Congress meant to use a scalpel." *Duguid*, 141 S. Ct. at 1171.

### B. The Statutory Context of the TCPA's Autodialer Definition Further Demonstrates That a "Random or Sequential Number Generator" Generates Random or Sequential Phone Numbers.

In rejecting Duguid's proposed broad autodialer definition the Supreme Court relied heavily on "statutory context." *Duguid*, 141 S. Ct at 1171. The Court considered that § 227(b)(1) of the TCPA prohibits use of an autodialer to call "emergency telephone line[s]" and lines "for which the called party is charged for the call" and to use an autodialer "in such a way that two or more telephone lines of a multi-line business are engaged simultaneously." *Id.* It concluded that [t]hese prohibitions target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *Id.* Such equipment risks dialing emergency lines randomly or tying up sequential blocks of phone numbers within a single entity only because it generates random or sequential phone numbers to be dialed (either immediately or after storage). Just as Duguid's broad autodialer definition would have swept well beyond the equipment targeted by Congress, so too would Plaintiff's. As with the legislative history presented by DoNotPay, Plaintiff's Opposition fails to address this statutory context.

      **C.**     ***Duguid* Addressed the Question Left Open by the D.C. Circuit and on Which Other Circuits were Split and Concluded that a Device Qualifies as an Autodialer Only if it Can Generate Random or Sequential Phone Numbers.**

DoNotPay explained in its Motion the convoluted history of the autodialer definition's various interpretations culminating first in the D.C. Circuit's decision in *ACA International*, and then in a Circuit split. Mot. at 7-11. As we explained, the D.C. Circuit found the FCC's 2015 autodialer interpretation arbitrary and capricious and therefore set it aside. *ACA Int'l v. FCC*, 885 F.3d 687, 697-703 (D.C. Cir. 2018).[1] But it declined to answer the question that the petitions to the FCC that led to the FCC's 2015 Ruling had asked: Does a device qualify as an autodialer only if it can generate and dial random or sequential phone numbers? *See id.* at 701-03; Mot. at 7-9. Six Circuit Courts split on this question. Mot. at 10-11. That led the U.S. Supreme Court to grant certiorari in *Duguid* "to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers." *Duguid*, 141 S. Ct at 1168-69. Plaintiff does not dispute any of this.

Despite this undisputed background, Plaintiff wrongly contends that the Supreme Court rejected not only the broad autodialer interpretation followed in the Ninth, Second, and Sixth Circuits, but also the narrow autodialer interpretation followed in the Third, Seventh, and Eleventh Circuits. Opp. at 2 ("*Duguid* actually rejected the narrow [autodialer] definition put forth by the Third, Seventh, and Eleventh Circuits."). According to Plaintiff, rather than resolving a Circuit split by agreeing with one side or the other, the Supreme Court – in a footnote, no less – adopted an entirely new interpretation. Plaintiff is wrong. The Supreme Court did no such thing. It vacated and remanded the pending cases from Circuits that followed the Ninth Circuit's broad interpretation and let stand those on the other side of the split. *See* Mot. at 12. Had the Court rejected the Seventh and Eleventh Circuits' interpretations (the Third Circuit decision was not

---

[1] All district courts are bound by the D.C. Circuit's ruling because it was a consolidated appeal. *See Peck v. Cingular Wireless, LLC,* 535 F.3d 1053, 1057 (9th Cir. 2008); *MCI Telecomms. Corp. v. U.S. W. Commc'ns,* 204 F.3d 1262, 1267 (9th Cir. 2000).

before the Court), it would have also vacated and remanded those decisions. Plaintiff does not address this fact, which debunks his novel theory.[2]

Plaintiff also cites no portion of the Court's opinion for his view that *Duguid* rejected the Third, Seventh and Eleventh Circuit's narrow autodialer interpretation, which he concedes requires an ability to generate random or sequential phone numbers. That's because there is no such rejection. Nowhere does the *Duguid* decision disagree with any of those Circuits. Nor does it reject the long-accepted interpretation of "random or sequential number generator" in the context of the TCPA as equipment that generates random or sequential phone numbers. To the contrary, the decision repeatedly acknowledges that calls to random phone numbers, or sequential blocks of phone numbers, were the specific problems Congress sought to address. *See* Mot. at 12-13.

Unable to point to any discussion in the body of the *Duguid* decision that supports his position, Plaintiff doctors the Court's words. He ends the introduction section of his brief by invoking a modified quote from *Duguid*: "'[Defendant's] quarrel is with Congress, which did not define an autodialer as [narrowly] as [it] would have liked." Opp. at 2 (quoting *Duguid*) (alterations in original). But what the Court actually said is that "*Duguid's* quarrel is with Congress, which did not define an autodialer as *malleably* as he would have liked." *Duguid*, 141 S. Ct. at 1173 (emphasis added). The Court's actual words support DoNotPay's position, not Plaintiff's. While Congress may now want the autodialer prohibition to cover all calls and texts made by any mass calling or texting system, that is not what it was trying to achieve or enacted in 1991.

The only statement in *Duguid* that even remotely supports Plaintiff's position that the autodialer definition encompasses "equipment that utilizes a random or sequential number generator to determine the order in which to 'pick phone numbers' from a list of numbers to dial," Opp. at 4, is dicta from a lone footnote where the Court provided an example of a system in existence in 1991 that used a random or sequential number generator to store telephone numbers.

---

[2] Plaintiff is correct that only Justice Alito expressly stated his agreement with the analyses of the Third, Seventh and Eleventh Circuits. Opp. at 3. But that does not diminish the fact that the full Court allowed the decisions from the Seventh and Eleventh Circuits to stand, and neither the main opinion nor the concurrence suggests that a random or sequential number generator in the context of the TCPA need not generate random or sequential phone numbers to be dialed.

*Duguid*, 141 S. Ct at 1172 n.7 (citing Brief for Professional Association for Customer Engagement et al. as *Amici Curiae*) ("the PACE Brief") (attached as Exhibit A hereto). As explained in DoNotPay's Motion, this example was provided in the context of refuting Duguid's argument that it made no sense to "store" phone numbers using a random or sequential number generator. Mot. at 14. The Court's example describes a technology that uses the same random or sequential number generator to generate random or sequential telephone numbers and store those numbers for later dialing. *Id.*; *see also* PACE Brief at 21 ("[T]he harm committed by indiscriminate dialing is the same regardless of whether the telephone numbers are dialed immediately after each number is generated or stored in a file and dialed later."). Elsewhere the PACE Brief clarifies that the first step in the process described in the patented technology described in footnote 7 is to generate an "array" of sequential phone numbers that are stored. PACE Brief at 18, & 18 n. 4. In all instances, the telephone number that is dialed is first generated by a sequential number generator that produces blocks of sequential telephone numbers, and *then* it stores them. *Id*. Had the Court meant to reject the narrow autodialer interpretations followed in the Third, Seventh, and Eleventh Circuits, and adopt an entirely new interpretation advanced by no one, it certainly would not have done so by way of an explanatory footnote citing to a discussion of technology that generated sequential blocks of phone numbers and stored them. Notably, Plaintiff fails to address DoNotPay's explanation of the technology described in the PACE Brief.

### D. Plaintiff's Remaining Arguments Lack Merit.

Plaintiff falsely accuses DoNotPay of "rewrit[ing] the statutory definition of ATDS" to eliminate the word "store." Opp. at 2. DoNotPay actually agrees with Plaintiff that to qualify as an autodialer a device must use a random or sequential number generator to either store phone numbers for later dialing or to produce phone numbers for immediate dialing. This is *Duguid*'s holding. *Duguid* at 1167 ("The question before the Court is whether [the autodialer] definition encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator.' It does not."); *id.* at 1170 ("In sum, Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator."). It never

1  argued otherwise. The parties' disagreement lies in the functionality of the random or sequential
2  number generator that must be used. For all the reasons explained above and in the Motion, a
3  random or sequential number generator in the context of the TCPA's autodialer definition—given
4  its legislative and statutory context, as well as the context of *Duguid* itself—must be able to
5  generate random or sequential phone numbers. This interpretation is consistent with the statutory
6  and legislative context of the TCPA, as well as *Duguid's* analysis and repeated references to
7  random or sequential phone numbers. Plaintiff's interpretation, in contrast, extends the autodialer
8  definition to modern equipment that did not exist in 1991, and that performs the same insufficient
9  functionality performed by Facebook's system – selecting targeted phone numbers from a stored
10 list and automatically sending them text messages. *Duguid v. Facebook, Inc.*, 2017 U.S. Dist.
11 LEXIS 22562, at *2 (N.D. Cal. Feb. 16, 2017) ("Facebook maintains a database of phone numbers
12 on its computers to transmit these alert text messages to selected numbers."). Covering such
13 modern equipment would extend the autodialer definition far beyond Congress' language and
14 intent – something the Supreme Court made clear it would not do.

15       Plaintiff argues that DoNotPay's reading of *Duguid* renders the word "store" superfluous
16 because a number generator that generates telephone numbers thereby produces them, but the
17 statute requires only storage or production, not both. *See* Opp. at 3-4. And the Supreme Court
18 rejected this exact argument made by the plaintiff in *Duguid*, noting that "even if the storing and
19 producing functions often merge, Congress may have 'employed a belt and suspenders approach'
20 in writing the statute." *Duguid*, at 1172, n.7 (internal citation omitted).

21       Plaintiff further insists that DoNotPay's reading of *Duguid* is inconsistent with *Satterfield*
22 *v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), because DoNotPay supposedly does not
23 give the word "capacity" independent meaning. *See* Opp. at 4-6. Plaintiff is wrong. *Satterfield* held
24 that in order to qualify as an autodialer, the technology at issue need not actually store, produce, or
25 call randomly or sequentially generated telephone numbers, it only needs to have the capacity to
26 do so. *Id*. at 951. As is evident throughout its Motion, DoNotPay's reading of the statute is the
27 same – to fall within the autodialer definition the system at issue "must have the **capacity** to
28 generate random or sequential phone numbers." *See, e.g.*, Mot. at 1 (citing *Duguid*); *see also id.* at

6 ("The TCPA's Autodialer Definition Requires a *Capacity* to Generate Random or Sequential Phone Numbers"); *id.* at 7 ("The FCC Makes Clear That the Autodialer Definition Requires a *Capacity* to Generate and Dial Random or Sequential Phone Numbers); *id.* at 14 ("The FAC Fails to Plausibly Allege That DoNotPay's System Has the *Capacity* to Generate Random or Sequential Phone Numbers and Send Them Texts") (emphasis added in all). For purposes of this motion DoNotPay has not drawn a line between actual use and capacity, as Plaintiff alleges. Thus, *Satterfield* and the cases that invoke it (Opp. at 5-6) do not help Plaintiff here.

In fact, *Satterfield* supports DoNotPay's position because it explained that, to determine whether a system qualifies as an autodialer, the relevant inquiry is whether it has the capacity to or does store or produce random or sequential phone numbers. *Satterfield* was patently clear on this point:

> When evaluating the issue of whether equipment is an [autodialer], the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." Accordingly, a system need not actually store, produce, or call *randomly or sequentially generated telephone numbers*, it need only have the capacity to do it.

*Id*. at 951 (emphasis added); *see also id*. (examining conflicting evidence on whether the system at issue was "*capable of generating random or sequential telephone numbers*") (emphasis added).

### E.  Plaintiff's Allegations Fail to State a Claim Under a Proper Post-*Duguid* Autodialer Interpretation.

Plaintiff does not plausibly allege that DoNotPay's system has the capacity to generate, and either store or produce, and dial, *random or sequential phone numbers*. Thus, as explained in DoNotPay's Motion, his complaint must be dismissed for failure to state a claim. Mot. at 14-15.

In Opposition, Plaintiff does not dispute that the FAC fails to allege that DoNotPay's system is capable of generating (for storage and subsequent dialing, or for immediate production and dialing) random or sequential phone numbers. *See* Opp. at 8-9 (quoting detailed allegations that do not include such allegation or anything suggesting an ability to generate and dial random or sequential phone numbers). Nor does he address any case cited by DoNotPay in support of dismissal with prejudice where the allegations, like those at issue here, reflect calls or texts to

targeted phone numbers. *See* Mot. at 5-6 & n.1. Instead Plaintiff invokes a slew of cases, all of which are readily distinguishable for a variety of reasons.

First, all but one of the cases Plaintiff relies on were decided before *Duguid*. Because all of the California district court cases relied on the Ninth Circuit's now reversed interpretation of the autodialer definition, they are inapposite. Moreover, the District Court in *Duguid* dismissed the plaintiff's claim with prejudice because Duguid's allegations suggested a "direct targeting" of specific telephone numbers that would be "inconsistent with the sort of random or sequential number generation required for an [autodialer]." 2017 U.S. Dist. LEXIS 22562, at *10. Given the Supreme Court's reversal of the Ninth Circuit, the District Court's approach is more persuasive. Duguid's attorneys clearly thought so, because Duguid voluntarily dismissed his case with prejudice after the Supreme Court's ruling. *See* Notice of Dismissal, *Duguid v. Facebook, Inc.*, No. 3:15-cv-00985-JST, Dkt. 129 (N.D. Cal. Apr. 20, 2021).

Second, Plaintiff relies on numerous cases holding that detailed technical allegations regarding the use of an autodialer are not required to state a claim. *See* Opp. at 7-8. Such cases are beside the point here given that (a) Plaintiff provided lots of detailed technical allegations, and (b) DoNotPay does not contend that more detail is required. More on point is *Weisberg v. Stripe, Inc.*, 2016 U.S. Dist. LEXIS 96794, at *11 (N.D. Cal. July 25, 2016), where the complaint contained detailed allegations that the text messages were sent only to customers who voluntarily provided their phone numbers. The court dismissed because the "allegations suggest that [the] text messages are targeted to specific phone numbers[.]" By pleading facts inconsistent with the random or sequential number generation required of an autodialer, the plaintiff plead himself out of a TCPA claim. *Id*. at *11-12. Hufnus has done the same here.

Third, Plaintiff points to a handful of cases in support of the argument that a "generic or impersonal message" can suggest the use of an autodialer at the motion to dismiss stage. *See* Opp. at 9-10. But Plaintiff's allegations show that DoNotPay's text messages were targeted at the specific individuals who provided their phone numbers to DoNotPay: "**Finish signing up in the app or at donotpay.com/save**." FAC ¶ 20 (emphasis added); *see also id*. ¶ 12. In other words, they are not impersonal messages aimed at random or sequential phone numbers. They instead

target specific individuals who previously engaged with DoNotPay. DoNotPay cited numerous cases granting motions to dismiss with prejudice with similar allegations. *See* Mot. at 5-6 & n.1.

Fourth, Plaintiff cites cases declining to dismiss TCPA claims where the allegations showed that the same message was sent to multiple people over a short period of time, thereby suggesting use of automated technology. *See* Opp. at 10-11. However, allegations of automation alone are not sufficient to satisfy the autodialer definition. *Duguid*, 2017 U.S. Dist. LEXIS 22562, at *2, *rev'd* 926 F.3d 1146 (9th Cir. June 13, 2019), *rev'd*, 141 S. Ct. 1163 (2021); *accord Flores v. Adir Int'l, LLC*, No. CV 15-00076-AB (PLAx), 2015 U.S. Dist. LEXIS 92176, at *10 (C.D. Cal. July 15, 2015), *rev'd on other grounds*, 685 F. App'x 533 (9th Cir. 2017).

Finally, *Montanez v. Future Vision Brain Bank, LLC*, the only post-*Duguid* case Plaintiff cites, Opp. at 2, 9, also is distinguishable. There the complaint alleged that the defendant's system "has the ability to generate sequential numbers." 2021 U.S. Dist. LEXIS 67091, at *3 (D. Colo. Apr. 7, 2021). The messages at issue also were impersonal and did not reflect direct targeting to someone who had engaged with the defendant. *See id.* Thus, unlike here where DoNotPay's messages were targeted at individuals who engaged with its platform, it was plausible in *Montanez* that the system could generate random or sequential telephone numbers. Unlike in *Montanez*, Plaintiff's allegations here reflect a system that sent texts only to phone numbers provided by people registering for an account. Such allegations make it implausible that DoNotPay's system has the capabilities required to qualify as an autodialer under the TCPA.

Because Plaintiff relies on detailed allegations making it implausible that DoNotPay's system has the capacity to generate and dial random or sequential phone numbers, Plaintiff fails to state a claim for violation of § 227 and his FAC should be dismissed with prejudice.

### III. CONCLUSION

For the reasons stated above, DoNotPay respectfully requests that the Court grant its motion and dismiss the FAC with prejudice[3] for failure to state a claim.

---

[3] At the initial CMC, Plaintiff's counsel represented that the heart of this motion is a "fundamental disagreement as to what the Supreme Court stated in *Facebook*," Plaintiff is "totally satisfied" with the FAC's allegations, the issue at hand is purely legal, and if the Court disagrees with his legal theory he will not seek to replead. *See* Apr. 28, 2021 Hearing Tr. at 7-8 (Dkt. 31).

| | | |
|---|---|---|
| 1 | Dated: May 26, 2021 | Respectfully submitted, |
| 2 | | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation |
| 4 | | By: */s/ Tonia Ouellette Klausner*<br>         Tonia Ouellette Klausner |
| 6 | | Attorneys for Defendant<br>DONOTPAY, INC. |